The STATE of Ohio, Appellee,

v.

COOPER, Appellant.

[Cite as *State v. Cooper* (2000), 139 Ohio App.3d 149.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA99–05–051.

Decided July 24, 2000.

150

*Donald W. White,* Clermont County Prosecuting Attorney, and *David H. Hoffmann,* Assistant Prosecuting Attorney, for appellee.

*Rodenberg & Kennedy, Michael A. Kennedy* and *John Woliver,* for appellant.

VALEN, Judge.

Defendant-appellant, Garnet Sue Cooper, appeals her convictions in the Clermont County Court of Common Pleas for four counts of rape and four counts of felonious assault. We affirm all eight of appellant's convictions.

Appellant is the mother of four children: Jimmy, born on June 6, 1982, Ashley, born on January 22, 1986, Ernie Jr., born on March 13, 1990, and Fancy, born on July 4, 1991. All four children lived with appellant and appellant's boyfriend, Ernie Sr., who fathered Ernie Jr. and Fancy. Appellant was aware that Ernie Sr. had been incarcerated for sexually abusing two boys. Jimmy and Ashley visited their father, Timothy, on weekends.

The children were neglected and repeatedly abused by appellant, Ernie Sr., Timothy, and others. Clermont County Children Services received numerous complaints regarding the neglect and abuse. Brooke Lorthior, an investigative caseworker for the agency, had frequent and regular contact with appellant, the children, and Ernie Sr. over the course of several years. Lorthior also had access to the agency's records, which stretched back to Jimmy's birth. As early as February 1988 and continuing through 1997, the records revealed that the agency's caseworkers had observed that all four of the children were neglected, filthy, emotionally maltreated, developmentally delayed, and marked from physical abuse.

In 1988, the agency began receiving reports from appellant that both Timothy and Ernie Sr. had sexually abused Ashley and Jimmy. Nevertheless, appellant continued to allow the children to visit Timothy and to allow Ernie Sr. to live in their home with the children. As early as 1989, when Ashley was three years old,

a genital examination showed that she had been subject to repeated sexual abuse in the form of vaginal penetration. Another genital examination in 1994 showed that Ashley had an acute injury indicating recent sexual abuse. On that occasion, medical personnel were told that Ashley had been raped by a cousin, Ricky Belvins. Belvins was later convicted of that rape.

Caseworkers finally removed all four children from appellant's home on February 7, 1997, after finding that appellant's home had no heat. The children were placed into separate foster homes, where they had no visitation with one another. While in foster care, both Ashley and Fancy made independent allegations to their foster mothers that appellant and Ernie Sr. had sexually abused them. Ashley, who was twelve years old at the time, disclosed that Ernie Sr. had sexual intercourse with her on numerous occasions and that appellant had been present during the abuse and participated in that abuse by holding Ashley down for Ernie Sr., and even placed her own fingers in Ashley's vagina. Ashley stated that Ernie Jr. and Jimmy had been forced to hold her down while the sexual abuse occurred.

Ashley also stated that numerous other people, including her Aunt Debbie, Uncle Dino, "Paynter," and Ron, the landlord, had participated in sexually abusing her. In all, Ashley alleged that a total of twenty-three perpetrators had sexually abused her, either by touching her genitals or by having sexual intercourse with her. A 1997 genital examination revealed that Ashley's vagina had been penetrated.

Six-year-old Fancy also disclosed to her foster mother that she had been sexually abused by Ernie Sr. and appellant. Fancy related that Ernie Sr. "bounced on [her] stomach" when both were naked and that he touched her private parts. Fancy described that she performed acts of fellatio on Ernie Sr. Fancy also related numerous incidents in which Aunt Debbie, Uncle Dino, Paynter, and Ron, their landlord, touched her genitals. Fancy also related incidents in which she was forced to touch their genitals. Ashley confirmed that she had seen Ernie Sr. place his penis in Fancy's mouth.

Ernie Jr. and Jimmy also acknowledged their sisters', and their own, sexual abuse by appellant, Ernie Sr., and other people. Nine-year-old Ernie Jr. saw Ashley being sexually abused by Paynter and Ernie Sr. Ernie Jr. stated that appellant, Aunt Debbie, and Uncle Dino had placed their hands on his penis on many occasions. Both Jimmy and Ernie Jr. stated that they had been forced to hold Ashley and Fancy down while Ernie Sr. had sex with them. Jimmy confirmed that he had seen Ashley and Fancy being sexually abused by Ernie Sr. on many occasions.

Each of the children displayed a variety of symptoms of mental illness. Fancy, who was diagnosed with attention deficit hyperactivity disorder, required pro-

longed psychiatric care. Ernie Jr. was diagnosed with "conduct disorder" and also required prolonged psychiatric care. Jimmy, who was diagnosed with post-traumatic stress disorder, major depression, and generalized anxiety disorder, was committed on several occasions to a psychiatric hospital. Ashley, who was also diagnosed with post-traumatic stress disorder and major depression, was committed to a psychiatric hospital on at least two occasions in May 1998 and in July 1998.

When Ernie Sr. was confronted with the children's allegations of sexual abuse in July 1997, he committed suicide by firing a gun into his mouth. Timothy was later convicted of raping Ashley. The state indicted appellant on four counts of felonious assault,[1] four counts of rape,[2] and two counts of felonious sexual penetration.[3] Each of the felonious assault charges alleged that appellant had knowingly caused serious physical harm in the form of mental illness to each of the four children.

At appellant's request, the state filed a bill of particulars stating that appellant had committed felonious assault against each child by means of many acts and omissions, including her assistance in the rapes and sexual abuse and her failure to protect each child from physical and sexual abuse over his or her lifetime. At a pretrial hearing, appellant requested a more precise bill of particulars. The state, however, stated that the acts and omissions alleged as the basis for the felonious assault charges traced and mirrored the information in the children's services records that had been provided to appellant through discovery. The trial court denied appellant's request for a more specific bill of particulars.

Before trial, the state filed motions to videotape the testimony of Ashley, Jimmy, and Ernie Jr. The trial court granted the motion. The testimony of Ernie Jr. and Ashley was videotaped on July 16, 1998. The trial court judge was present and ruled on the objections raised by counsel. At the time Ashley testified, both defense counsel and the trial court judge were aware that she had been in a mental facility. Ashley herself testified that she had been hospitalized on several occasions. In addition, Ashley stated in her testimony that she was taking several medications, including Mellaril and Zoloft. Appellant did not request that the trial court conduct a voir dire examination to determine whether Ashley was a competent witness. The trial judge did not *sua sponte* question Ashley, who was twelve years old at the time.

---

1. R.C. 2903.11(A)(1).

2. R.C. 2907.02(A)(1)(b).

3. R.C. 2907.12(A)(1)(b).

In a motion to suppress made before trial, appellant objected to the admission of the videotaped testimony, citing the children's age and the "taint" resulting from others' influence on them. The trial court denied appellant's motion.

Immediately before trial, appellant again objected to the admission of both Ashley's and Ernie Jr.'s videotaped testimony in lieu of their live trial testimony. The trial court held a hearing to determine whether the children's live testimony would result in serious emotional trauma.

In that hearing, Melinda Bauer, a licensed social worker, and Dr. Paul Deardorff, a psychologist with substantial experience treating sexually abused children, testified regarding the harm the children would suffer if they were to testify at trial. Bauer testified that she had been seeing Ernie Jr. weekly for thirteen months, and she believed that there was a substantial likelihood that he would suffer serious emotional trauma if he were to testify at trial.

Dr. Deardorff also testified that there was a substantial likelihood that Ashley would suffer serious emotional trauma if she were to testify at trial. Dr. Deardorff stated that he had based his opinion on records of Ashley's various hospitalizations. Using those hospital records, appellant cross-examined the doctor concerning his opinion. Ashley's hospitalization records indicated that she took psychotropic medications and that she had been in restraints due to physical self-punishment. After finding reasonable cause to believe both children would suffer serious emotional trauma, the trial court admitted the children's videotaped testimony.

Appellant was tried before a jury. Before Ashley's videotaped testimony was admitted, appellant again objected, claiming that Ashley had been mentally incompetent at the time she testified. After noting that he had observed Ashley's testimony during the videotaping, the trial court judge found that nothing existed at that time to give an indication that Ashley was unable to receive and relate her just impressions. The trial court admitted the videotape.

At the close of the state's evidence, appellant moved for acquittal on the felonious assault charges pursuant to Crim.R. 29. The trial court denied the motion for acquittal. The trial court also denied appellant's renewed motion for acquittal made at the close of all the evidence.

The jury convicted appellant of four counts of rape and four counts of felonious assault. She was acquitted of the two felonious sexual penetration charges. Before sentencing, appellant filed a motion requesting that the trial court merge her rape convictions into her felonious assault convictions because the rapes constituted the underlying acts of felonious assault. The trial court refused to merge or dismiss appellant's rape convictions.

The trial court sentenced appellant to serve a term of life imprisonment for each of her four rape convictions and eight to fifteen years for each of her felonious assault convictions. The trial court also found appellant to be a sexual predator. The court ordered all of appellant's sentences to be served consecutively to one another.

Appellant appeals, raising six assignments of error. We address appellant's assignments of error out of order.

 Assignment of Error No. 5:

"The trial court erred by denying defendant's motion to dismiss the felonious assault charges."

Appellant contends that the trial court erred in denying her Crim.R. 29 motion to dismiss the four felonious assault charges at the close of the state's evidence. Appellant claims that the charges should have been dismissed because many instances of neglect over each child's lifetime may not constitute a single felonious assault, as the state charged.[4] Appellant also argues that the state proved the causation element of the felonious assault charges by using the separately charged rapes. The state responds that felonious assault can cover repetitive conduct over a period of years and that all the evidence established the necessary causation for the serious physical harm of mental illness.

 Under Crim.R. 29(A), a trial court shall order the entry of a judgment of acquittal on one or more of the charged offenses if the evidence is insufficient to sustain a conviction when examining all the evidence in the light most favorable to the state. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399–400. In reviewing the trial court's ruling on this motion, this court must view the evidence in a light most favorable to the state. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 555 N.E.2d 689.

Appellant was convicted of four counts of felonious assault under R.C. 2903.11(A)(1). Each of the four felonious assault charges is based upon appellant's treatment of each of her children over the course of his or her lifetime, causing his or her mental illness. The specific instances of conduct constituting the felonious assaults are enumerated in the bill of particulars. The conduct for which appellant was charged with committing felonious assault ranges from her repeated neglect of the children's education and medical needs to her physical

---

4. Appellant raises this issue within both her first and fifth assignments of error. Since the issue revolves around the propriety of the state's method of charging the felonious assaults, it is better addressed as part of our analysis regarding appellant's motion to dismiss the charges under Crim.R. 29. We engage in a separate, but related, analysis for appellant's assignment of error regarding the bill of particulars.

and sexual abuse of the children and her failure to protect the children from being physically and sexually abused by others.

Under R.C. 2903.11(A)(1), a person commits felonious assault by knowingly causing serious physical harm to another. R.C. 2901.01(E) defines "serious physical harm" as "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." The state's approach at trial was that all of appellant's numerous acts, taken together, resulted in each child's mental illness, therefore constituting a single count of felonious assault perpetrated on each child. On appeal, appellant claims that the trial court should have dismissed all four of the felonious assault charges because a single felonious assault charge may not be based upon numerous acts occurring over the course of many years.

Our research reveals no other Ohio case in which a defendant has been convicted of a single count of felonious assault for committing several acts that have resulted in a victim's mental illness. It is clear that a defendant may knowingly cause a person to suffer mental illness constituting the "serious physical harm" necessary for a conviction of felonious assault under R.C. 2903.11(A)(1) by perpetrating a single act or a single omission.

For example, in *State v. Hodges* (1995), 107 Ohio App.3d 578, 584, 669 N.E.2d 256, 260–261, the defendant, who was the victim's priest and counselor, cajoled the victim into having sex with him. The defendant's act in having sex with the victim caused her to have a mental breakdown that required long-term psychiatric care. *Id.* The court held that Hodges committed felonious assault causing mental illness by his act in having sex with the victim, even though expert testimony indicated that other stressors may also have contributed to her mental illness. *Id.*

Not only may a person commit felonious assault by perpetrating an act causing mental illness, but a person may commit felonious assault when his or her failure to act causes mental illness. In *State v. Elliott* (1995), 104 Ohio App.3d 812, 816, 663 N.E.2d 412, 414–415, the defendant killed his wife and left her corpse in a place where his young son would likely find his mother's body. Elliott owed a legal duty to protect his child from harm. *Id.* Since the child suffered serious physical harm in the form of a mental illness as a result of Elliott's failure to act in accordance with that legal duty, the appellate court held that his failure constituted the act necessary for the crime of felonious assault. *Id.*

While these cases show that a person's single act or omission may cause mental illness, the instant case involves numerous acts and omissions perpetrated by appellant against each of her children over the course of years causing each child's mental illness. We also recognize that a defendant may be convicted of

several counts of felonious assault where each act results in a separate physical injury that occurs at a different time and in a different manner. See *State v. Campbell* (1983), 13 Ohio App.3d 338, 13 OBR 417, 469 N.E.2d 855.

Nevertheless, we find that R.C. 2903.11(A)(1) does not mandate that a defendant perform a single act in order to commit the crime of felonious assault by causing a single injury in the form of mental illness.

The statute's broad language requires only that a defendant knowingly cause serious physical harm. The means by which a perpetrator can cause such harm, by performing either a single act or a multitude of acts, is not specifically enumerated in this section of the statute. The legislature could have specifically required that a perpetrator commit a single act in order to commit felonious assault; however, the statute does not contain this requirement.

Indeed, the statute's legislative history convinces us that appellant's convictions of felonious assault under these facts is the intended result. In determining legislative intent, the court may consider a number of matters, including the object to be obtained, the circumstances under which the statute was enacted, the legislative history, and the common law or former statutory provisions. R.C. 1.49. The committee comment to Am.Sub.H.B. No. 511, which codified R.C. 2903.11(A)(1), shows that the felonious assault statute replaced a number of special assault statutes that prohibited specific acts:

"The section replaces a number of special assault offenses while utilizing a different approach than that taken in former law. Previously, a number of statutes prohibited specific acts such as shooting, maiming, or cutting, or prohibited attacks on certain persons such as law enforcement officers. This section does not distinguish among persons and, except with respect to deadly weapons and dangerous ordnance, *is not based on the means used to commit the offense.* The relative gravity of this offense and of the three lesser assault offenses following it is graded according to three factors: the degree of culpability; the seriousness of the actual or potential harm involved; and whether or not a deadly weapon is used." (Emphasis added.) 1973 Technical Committee Comment to Am.Sub.H.B. No. 511.

This supports our interpretation that appellant's many acts and omissions against each of her children, causing each child's mental illness, may constitute the acts necessary for a single conviction of felonious assault.

The trial court also determined that the state had introduced sufficient evidence of causation for the jury to find appellant had committed felonious assault. If reasonable minds could conclude that a defendant knowingly caused each child to suffer serious physical harm, the trial court should deny a Crim.R. 29 motion. See *Hodges,* 107 Ohio App.3d at 584, 669 N.E.2d at 260–261. Here,

Dr. Deardorff testified regarding the mental illnesses that each of appellant's children suffer. For each of the children, Dr. Deardorff opined that his or her mental illness had been caused by appellant's behavior, treatment, and abuse.

Appellant attempted to undermine the doctor's assessment of causation during cross-examination. Even though the doctor could not separate the children's sexual abuse from their physical and emotional maltreatment as the cause of their mental illnesses, the trial court was not required to acquit. From Dr. Deardorff's testimony, a jury could reasonably find that appellant caused "serious physical harm" in the form of mental illness that is prohibited by the felonious assault statute. Appellant's fifth assignment of error is overruled.

Assignment of Error No. 1:

"The trial court erred by not ordering the state to provide in its bill of particulars specific information informing defendant of the particular conduct establishing the four felonious assault charges."

Appellant contends in this assignment of error that the bill of particulars filed by the state for the felonious assault charges did not adequately apprise her of the conduct constituting the crime because it described a multitude of acts over the course of years, thus depriving her of the opportunity to adequately defend against the charges. The state responds that the bill of particulars for the felonious assault charges was adequate because it described all of the acts causing the children's serious physical harm.

The indictments charging appellant with felonious assault contain only allegations that appellant knowingly caused each child serious physical harm. The bill of particulars the state filed at appellant's request, however, lists a multitude of acts perpetrated by appellant. The acts included repeated physical and sexual abuses, appellant's failure to protect each child from that abuse, and appellant's numerous other acts and omissions.

As we have already determined in analyzing appellant's fifth assignment of error, appellant's four felonious assault charges were properly based upon numerous acts and omissions perpetrated against her children over the course of years. Appellant argues that, even if felonious assault may be charged in this way, the bill of particulars' vague allegations fail to provide specific information about the conduct constituting the crime so that she could not adequately defend against it.

We find the bill of particulars apprised appellant with adequate specificity of the conduct constituting the crime of felonious assault. Pursuant to Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution, an individual accused of a felony is entitled to an

indictment setting forth the nature and cause of the accusation. *State v. Sellards* (1985), 17 Ohio St.3d 169, 170, 17 OBR 410, 410–411, 478 N.E.2d 781, 783–784. In addition to the indictment, an accused may also request a bill of particulars under R.C. 2941.07, which requires the prosecuting attorney to furnish a bill of particulars setting up specifically the nature of the offense charged and the conduct of the defendant that is alleged to constitute the offense. *Id.*

A bill of particulars is designed to provide the accused, upon proper demand, with greater detail concerning the nature of the offense charged and of the criminal conduct alleged to constitute the offense. The bill is appropriately supplied where the indictment, although legally sufficient in describing the elements of the charged offense, is so general in nature that the accused is not given a fair and reasonable opportunity to prepare his defense. *State v. Gingell* (1982), 7 Ohio App.3d 364, 367, 7 OBR 464, 466–467, 455 N.E.2d 1066, 1070–1071. The purpose of a bill of particulars is to elucidate or particularize the conduct of the accused alleged to constitute the charged offense. *Sellards*, 17 Ohio St.3d at 170, 17 OBR at 410–411, 478 N.E.2d at 783–784. It is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery. *Id.*

Here, the bill of particulars listed numerous omissions and acts by appellant that constituted the basis for each of the four felonious assault charges. As the state aptly noted at a hearing on the matter, appellant had received discovery material detailing each instance of conduct generally alleged in the bill of particulars. Moreover, the absence of specific time periods for each of the numerous acts listed does not make the bill of particulars inadequate because time was not material to the charges or to appellant's defense. See *Gingell*, 7 Ohio App.3d at 368, 7 OBR at 468–469, 455 N.E.2d at 1071–1072.

The bill of particulars' enumeration of appellant's acts and omissions constituted a description of the particular conduct forming the basis of the crimes. The record shows that appellant had sufficient information regarding each instance of conduct to mount a vigorous defense against the felonious assault charges. Nothing more than that is contemplated by the statutes and criminal rules providing for a bill of particulars. See *id.* at 368–69, 7 OBR at 468–469, 455 N.E.2d at 1071–1072. Appellant's first assignment of error is overruled.

Assignment of Error No. 2:

"Defendant was denied due process of law in the trial below because the felonious assault charges as described in the bill of particulars permitted the state to present to the jury every prejudicial fact intending to establish that defendant was a bad parent despite being wholly irrelevant to the charges."

Appellant contends that the broad allegations in the bill of particulars permitted the state to introduce irrelevant evidence that unfairly prejudiced appellant because it showed only that she was a bad parent. The state answers that the trial court properly admitted the evidence relating to the felonious assault charges because the acts constituting felonious assault occurred in the same course of conduct as the rapes.

Although nominally a due process allegation, appellant's assignment of error actually raises issues of relevancy, unfair prejudice, and the admission of evidence of other bad acts. Relevant evidence that tends to make the existence of any fact of consequence more or less probable is generally admissible. Evid.R. 401 and 402. However, otherwise relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403. To that end, Evid.R. 404(B) prohibits the introduction of evidence of other crimes, wrongs, or acts that are wholly independent of and unrelated to the offense for which the accused is on trial in order to prove a person's character to show that he or she acted in conformance therewith. See *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 366, 662 N.E.2d 311, 328–329; see, also, *State v. Trummer* (1996), 114 Ohio App.3d 456, 462, 683 N.E.2d 392, 396–397.

A reviewing court will not reverse the trial court's judgment admitting or excluding evidence unless the trial court clearly abused that discretion, resulting in prejudice to the complaining party. *State v. McCray* (1995), 103 Ohio App.3d 109, 109, 658 N.E.2d 1076, 1079. An abuse of discretion connotes more than a mere error of law; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 170–171.

The trial court did not abuse its discretion. The state introduced only relevant evidence that proved appellant committed the acts constituting the crimes of felonious assault. The bill of particulars lists a multitude of acts perpetrated by appellant, including repeated physical and sexual abuse and appellant's failure to protect each child from abuse that occurred over the course of years, resulting in each child's mental illness. With the bill of particulars' allegations, the state introduced evidence showing that appellant had committed the acts constituting the felonious assaults.

All of the evidence appellant claims was improperly admitted as a result of the allegations in the bill of particulars constituted acts proving the crimes of felonious assault. The evidence did not constitute evidence of other crimes, but was entirely relevant to prove the charged crimes. We fail to see how appellant could possibly be unfairly prejudiced, and thus deprived of due process, when the state introduced only evidence of acts constituting the crimes with which she had been charged. Appellant's second assignment of error is overruled.

**164**

■ Assignment of Error No. 3:

"The trial court erred by admitting into evidence the videotaped deposition of the child, Ashley * * *."

Appellant contends that the trial court judge, who was present during Ashley's testimony, should have conducted an inquiry into Ashley's mental competency before she testified via videotape given the facts within his knowledge. The state claims that the trial court did not abuse its discretion in failing to conduct a *sua sponte* competency hearing. We find that the trial court was not obligated to conduct such an inquiry.

■ Under Evid.R. 601(A), every person is competent to be a witness except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truthfully. *State v. Kinney* (1987), 35 Ohio App.3d 84, 85–86, 519 N.E.2d 1386, 1387–1389. In order for the trial court to have a *sua sponte* duty to inquire into a witness's competency, that competency must have been clearly called into question by the time the witness was called to the stand. *Id.* at 86, 519 N.E.2d at 1388–1389.

■ Even where a witness has been committed to a mental facility, that commitment does not automatically render that witness incompetent to testify if he or she has sufficient understanding to comprehend the obligation of an oath and is capable of giving a correct account of the matters seen or heard in reference to questions at issue, notwithstanding some unsoundness of mind. *State v. Bradley* (1989), 42 Ohio St.3d 136, 140, 538 N.E.2d 373, 378; *State v. Wildman* (1945), 145 Ohio St. 379, 386, 31 O.O. 5, 8, 61 N.E.2d 790, 793–794. Indeed, some unsoundness of mind does not render a witness incompetent if the witness otherwise possesses the three basic abilities required for competency: the ability to accurately observe, recollect, and communicate that which goes on around him or her. *Id.* at 379, 31 O.O. at 5, 61 N.E.2d at 791, paragraph three of the syllabus.

■ A trial court judge may choose to conduct a voir dire examination if he has reason to question a child's competency. *State v. Clark* (1994), 71 Ohio St.3d 466, 469, 644 N.E.2d 331, 334. The trial court's decision not to conduct a voir dire examination, in the absence of a compelling reason to do so, will not be disturbed on appeal absent an abuse of discretion. *Id.* at 469, 644 N.E.2d at 334.

As provided under Evid.R. 601, the trial court initially presumed twelve-year-old Ashley to be a competent witness. Ashley was well over the age of ten at the time she testified on videotape. Under Evid.R. 601, however, Ashley's competency could be questioned by the court if she appeared to be of unsound mind. Appellant contends that the trial court should have questioned Ashley's compe-

tency because she had been committed to a mental facility on several different occasions, she had been in restraints in a mental facility for much of the two weeks preceding her testimony,[5] and she was taking several psychotropic medications.

These facts fail to meet *Kinney*'s standard of clearly calling Ashley's competency into question. Our thorough review of Ashley's videotaped testimony indicates that she never testified in such a way as to place her competency into question, which would have necessitated a *sua sponte* inquiry by the trial court. Indeed, the trial court specifically noted that Ashley's behavior during her testimony indicated that she was capable of observing, recollecting, and communicating, despite any hospitalization or medication.

While Ashley herself testified that she had been hospitalized three times, that she was currently hospitalized, and that she was on several medications including Zoloft and Mellaril, she demonstrated the characteristics of a coherent, rational, and intelligent twelve-year-old girl. Not only did Ashley relate her course of hospitalizations and medications, but she logically and unequivocally answered every question the prosecutor and defense counsel put to her during direct examination and cross-examination.

Appellant never called Ashley's mental competency into question before or during her videotaped testimony. Ashley appeared more than capable of receiving just impressions of the facts and transactions about which she was examined and relating them truthfully. She simply gave the court no reason to question the soundness of her mind. Given Ashley's demeanor during her testimony, the trial court had no compelling reason to conduct a voir dire examination.

The trial court did not abuse its discretion when it did not conduct a *sua sponte* inquiry into Ashley's competency after observing her testify in an entirely rational manner. Appellant's third assignment of error is overruled.

Assignment of Error No. 4:

"The trial court erred by permitting the introduction into evidence of the videotape depositions of Ashley * * * and Ernie, Jr., pursuant to R.C. 2945.481."

Appellant next contends that the trial court erred in admitting the videotaped testimony of both Ashley and Ernie Jr. because the state did not offer competent evidence to support the court's finding that the children would face serious emotional trauma were they to testify. The state, however, contends that the

---

**5.** Although appellant's brief indicates that Ashley had been in restraints for much of the two weeks preceding her testimony, the record indicates only that Ashley had been in restraints at some point during her July 1998 hospital stay. The record does indicate that extensive discussions regarding Ashley's hospitalization occurred off the record.

evidence it offered in the form of testimony from Bauer and Dr. Deardorff supported the trial court's finding of serious emotional trauma so that the videotaped testimony was admissible under R.C. 2945.481(B)(1)(b). We agree that the evidence supports the trial court's admission of the videotapes into evidence in lieu of requiring the children to testify live at trial.

R.C. 2945.481(B)(1)(b) [6] provides that the videotaped deposition of a child victim is admissible if the trial judge determines that there is reasonable cause to believe that, if the child victim who gave the deposition were to testify in person at the proceeding, he or she would experience serious emotional trauma. In order to admit a child victim's videotaped deposition, the trial court must make a finding that the child would experience serious emotional trauma if required to testify in open court. *State v. Self* (1990), 56 Ohio St.3d 73, 80, 564 N.E.2d 446, 453–454.

As a reviewing court, we are constrained to affirm the decision of the trial court to permit the videotaped testimony if the court's findings were supported by competent, credible evidence. *Id.; State v. Sibert* (1994), 98 Ohio App.3d 412, 423, 648 N.E.2d 861, 867–868. Our review of the record convinces us that the trial court's factual findings with respect to the use of both Ashley's videotape and Ernie Jr.'s videotape at trial were supported by competent, credible evidence.

As to Ernie Jr.'s videotape, appellant claims a lack of competent and credible evidence for the trial court to find the possibility of serious emotional trauma because Bauer, a licensed social worker, was not a qualified expert under Evid.R. 702(B) who could offer her opinion regarding the harm. Initially, we fail to see a connection between the finding the trial court must make for the admission of Ernie Jr.'s videotaped testimony and the necessity for an expert's qualification under Evid.R. 702(B). R.C. 2945.481(B)(1)(b) requires a finding of serious emotional trauma. The statute does not require that the trial court consider an opinion from an expert qualified under Evid.R. 702(B) when making that finding. The trial court may make the necessary finding without an expert opinion. The trial court is only required to base its finding on competent, credible evidence.

A social worker's opinion testimony can support a trial court's finding of serious emotional trauma so that a child's videotaped testimony may be admitted in lieu of live testimony, even without the social worker's qualification as an expert under Evid.R. 702(B). In *Self,* 56 Ohio St.3d at 80, 564 N.E.2d at 453–454,

---

6. This statute is the recodified version of R.C. 2907.41(B)(1)(b), which contained precisely the same standard for a trial court's determination whether to allow videotaped testimony of a child victim in lieu of live testimony.

the Supreme Court determined that a social worker's testimony supported the trial court's finding that serious emotional trauma would result from a child's participation in the proceeding so that videotaped testimony was admissible.

Regardless, Bauer was an expert qualified under Evid.R. 702(B) to give her opinion regarding the trauma that Ernie Jr. would experience if he testified. Under Evid.R. 702(B), a witness may testify as an expert if the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony. Several Ohio appellate districts have applied the criteria in Evid.R. 702(B) to find that a social worker's education, training, and experience are sufficient to qualify him or her as an expert. *In re Rodriguez* (Feb. 19, 1988), Ottawa App. No. OT–87–18, unreported, 1988 WL 15667; *In re Wilson Children* (May 20, 1996), Stark App. No. 95CA0231, unreported, 1996 WL 363434; *State v. Curtis* (Oct. 20, 1988) Cuyahoga App. No. 54525, unreported, 1988 WL 112856.

Here, the trial court held a hearing on the admissibility of Ernie Jr.'s videotaped testimony at which Bauer stated her qualifications as an expert. Bauer testified that she had a master's degree in social work, that she was a licensed social worker, that she was a family and child therapist, and that she had ten years of clinical experience in working with victims of sexual abuse. In addition, Bauer testified that she had been seeing Ernie Jr. on a weekly basis for the preceding thirteen months and that she had access to all of his clinical evaluations.

Bauer then testified that there was a substantial likelihood that Ernie Jr. would suffer serious emotional trauma if forced to testify. Because Bauer had education, training, and substantial experience in treating Ernie Jr., she was qualified to give her expert opinion under Evid.R. 702(B). Bauer's opinion was competent evidence upon which the trial court properly relied in determining the admissibility of Ernie Jr.'s videotaped testimony under R.C. 2945.481.

 As to Ashley's testimony, appellant contends that the trial court committed error in allowing Dr. Deardorff to opine that Ashley would suffer serious emotional trauma without requiring the records on which the doctor relied in forming that opinion to be admitted into evidence. Under Evid.R. 705, an expert may testify in terms of opinion or inference and give his reasons therefor after disclosing the underlying facts and data. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing. Evid.R. 703.

In *Sibert*, 98 Ohio App.3d at 422, 648 N.E.2d at 866–867, the court addressed the facts that Evid.R. 705 requires an expert to disclose when he or she offers an opinion about a child victim's possible emotional trauma for purposes of R.C.

2945.481. Before giving his opinion, a doctor who had assessed the children testified that he had administered a variety of tests, observed the children, and interviewed the children several times. *Id.* The court held that the doctor's statements about the data he used adequately set forth the underlying facts and the basis for his opinion. *Id.*

As in *Sibert*, Dr. Deardorff adequately set forth the facts forming the basis for his opinion that Ashley would suffer serious emotional trauma were she to testify live. Dr. Deardorff, a psychologist with substantial experience treating sexually abused children, testified that he conducted a clinical interview with Ashley on one occasion. His opinion was based, in part, on his interview notes. Dr. Deardorff also stated that he had reviewed records from two of Ashley's three hospitalizations, noting that Ashley had been taking several different medications and that she had been in physical restraints during her July 1998 hospitalization.

Dr. Deardorff's testimony adequately set forth the facts forming the basis for his opinion. We note here that Evid.R. 703 only requires that the doctor base his opinion upon facts or data perceived by him. The rule's disjunctive language allows, but does not require, those facts or data to be admitted into evidence. Once the doctor testified to his opinion, he was required to disclose the data pursuant to Evid.R. 705. Nothing required the records on which the doctor relied to be admitted into evidence. The doctor's disclosure of facts, without admission of the records, constituted an adequate basis so that the trial court properly allowed him to testify as to his expert opinion. See *State v. Barton* (1991), 71 Ohio App.3d 455, 468, 594 N.E.2d 702, 711.

The trial court's findings as to the admission of both Ernie Jr.'s and Ashley's videotaped depositions are supported by competent, credible evidence. Appellant's fourth assignment of error is overruled.

 Assignment of Error No. 6:

"The trial court erred by denying defendant's motion for dismissal of the rape convictions."

Appellant claims that the trial court should have dismissed her rape convictions because they arose from the same conduct constituting the felonious assault charges and that the trial court's failure to do so subjects her to double jeopardy. The state responds that appellant may be convicted of all counts of rape and felonious assault.

 The double jeopardy protections afforded by the federal and state constitutions guard citizens against both successive prosecutions and cumulative punishments for the same offense. *State v. Rance* (1999), 85 Ohio St.3d 632, 634, 710 N.E.2d 699, 701–702. In *Rance*, the Supreme Court of Ohio set out the appropriate analysis to be used in determining whether two offenses are the same

offense for double jeopardy purposes. The court ruled that the elements of alleged allied offenses are to be compared in the abstract, overruling prior cases and language to the contrary. *Id.* at 632, 710 N.E.2d at 700, paragraph one of the syllabus.

■■■■ Under *Rance,* when determining whether two or more offenses are allied offenses of similar import, the court should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* If the elements of the crimes correspond, the defendant may not be convicted of both under Ohio's merger statute, R.C. 2941.25(B), unless the court finds that the defendant committed the crimes separately or with separate animus. *Rance,* 85 Ohio St.3d at 638–639, 710 N.E.2d 699.

Using essentially the argument rejected in *Rance,* appellant contends that she cannot be convicted of both felonious assault and rape because the same act provided the grounds for both charges. *Id.* at 634, 710 N.E.2d at 701–702. We likewise reject appellant's argument. Using the appropriate framework, we compare the elements of felonious assault and the elements of rape. To commit the crime of felonious assault, the state was required to show that appellant knowingly caused serious physical harm to another person. R.C. 2903.11(A)(1). To commit the crime of rape, the state was required to show that appellant engaged in sexual conduct with another person who was not that person's spouse and was less than thirteen years of age. R.C. 2907.02(A)(1)(b).

■■■■ The elements of felonious assault and rape do not overlap; each crime requires the proof of acts not required in proving the other. *State v. Jones* (1992), 83 Ohio App.3d 723, 738–739, 615 N.E.2d 713, 723. The commission of rape does not necessarily result in felonious assault, and vice versa. See *id.* An individual may therefore commit one crime without also committing the other. Since the elements of the crimes do not correspond, we need not determine whether appellant committed each of the crimes with a separate animus. See *Rance,* 85 Ohio St.3d at 638–39, 710 N.E.2d at 704–705.

Accordingly, appellant's convictions of four counts of rape and four counts of felonious assault did not subject her to double jeopardy. The trial court correctly refused to either dismiss her rape convictions or otherwise merge the rape convictions into her felonious assault convictions. We overrule appellant's sixth assignment of error.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.