[Cite as *State v. Hurst*, 2020-Ohio-2885.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-03-028 |
| | : | O P I N I O N |
| - vs - | | 5/11/2020 |
| | : | |
| JERRY HURST, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33649

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Kidd & Urling LLC, Thomas W. Kidd, Jr., James P. Urling, 8913 Cincinnati-Dayton Road, West Chester, Ohio 45069, for appellant

**PIPER, J.**

{¶1}   Appellant, Jerry Hurst, appeals his conviction for gross sexual imposition in the Warren County Court of Common Pleas.

{¶2}   When S.K. was approximately four years old, he visited a relative's home where Hurst was living.  During what was to be a three-day visit, Hurst sexually abused the child.  The child told his relative that he did not want to stay at her home any longer, and

the child's mother ("Mother") came to pick up the child. The child, who had been crying and was "terrified," ran to Mother and seemed to her to be sad and scared. Thereafter, the child had recurring nightmares and would scream out in his sleep asking for help. The child also refused to go to bed without a light on or without the door to his bedroom being open.

{¶3} S.K. also began to act out in ways he had never done before. For example, S.K. and Mother's fiancée were cleaning his bedroom. When the fiancée bent over on his hands and knees to pick up items, the child pulled down his pants and urinated on the fiancée's buttocks. The child explained, "that's what [Hurst] did to" him. Later that night, Mother gave the child a bath. The child bent over, separated the cheeks of his buttocks, and told Mother to "get in there."

{¶4} After the incidents involving the child urinating on Mother's fiancée and what occurred during the bath, Mother went to the police, and an investigation began. Hurst was later indicted for rape of a child under ten, as well as gross sexual imposition of a child less than 13. Hurst pled not guilty and the matter proceeded to trial.

{¶5} Before trial, the trial court held a competency hearing to determine if S.K. was competent to testify given concerns Hurst raised about the child's mental instability. The trial court also allowed the child's testimony to be videotaped via deposition where Hurst was located outside the courtroom while S.K. testified. The court later determined that S.K. was competent to testify and granted the state's motion to admit S.K.'s deposition testimony in lieu of live in-court testimony during Hurst's jury trial.

{¶6} The jury found Hurst guilty of gross sexual imposition, but was unable to reach a verdict as to the rape charge. The trial court sentenced Hurst to five years in prison on the gross sexual imposition conviction. Hurst now appeals his conviction, raising the following assignments of error.

{¶7} Assignment of Error No. 1:

- 2 -

{¶8} THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN MR. HURST'S CONVICTION.

{¶9} Hurst argues in his first assignment of error that his conviction was against the manifest weight of the evidence.

{¶10} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶11} Questions regarding witness credibility and weight of the evidence "are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. As a result, "the question upon review is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Grinstead*, 12th Dist. Butler Nos. CA2010-06-150, CA2010-07-163 thru 167, CA2010-07-180, 2011-Ohio-3018, ¶ 11. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶12} Given a jury's role as arbiter of credibility, it is entitled to believe or disbelieve all, part, or none of a witness' testimony. *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 90. Moreover, there is nothing in the law requiring that a sexual assault victim's testimony be corroborated as a condition precedent to conviction. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 41.

{¶13} Hurst was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which prohibits sexual contact with another who is less than 13 years old. Sexual contact is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶14} After reviewing the record, we find that Hurst's conviction was not against the manifest weight of the evidence. S.K. testified that Hurst's "pee pee" touched his "butt" while it was "hard." The child further testified, "he pulled my pants down, then he rubbed on top of me and flipped me over." When the state asked the child whether Hurst's penis was touching his buttocks cheeks, S.K. testified that Hurst's penis was "inside" his buttocks cheeks. The child also recalled that he was crying and wanted to go home after the incident with Hurst.

{¶15} While S.K.'s testimony was enough to establish the elements of gross sexual imposition, the jury also heard testimony from Mother that S.K. came home early from his visit and that he was upset and crying. After that visit, the child began having night terrors that included his yelling for help, or screaming in his sleep, "get away from [me]," "don't touch me," "get off me," "I don't want to do this," "I don't want to go," and "don't do that."

{¶16} S.K. also acted out in sexual ways, including urinating on the buttocks of Mother's fiancée while he was bent over picking up S.K.'s belongings. When asked to explain his behavior, S.K. told the fiancée, "that's what [Hurst] did to me." The fiancée

- 4 -

testified that the child was scared when he talked about the incident, and that after his disclosure, the child would not go to sleep without a light on in his room and the door to his bedroom open. S.K. also separated his buttocks cheeks during a bath and told Mother, "get in there."

{¶17} S.K. received medical attention and was diagnosed with postraumatic stress disorder and dissociative symptoms such as derealization. S.K.'s therapist testified that S.K.'s actions and mannerisms, including telling fantastical stories, were a defense mechanism used to combat stressful situations that made him feel unsafe. The therapist also testified to other behaviors she attributed to the sexual abuse, including S.K. defecating on a table and chasing a staff member with the excrement because that staff member reminded him of Hurst and made him feel unsafe.

{¶18} The jury also heard from Hurst, who testified in his own defense. Hurst denied having sexual contact with S.K. and claimed that Mother's fiancée coached the child into lying about the abuse in an attempt to separate Mother from her family. However, the jury heard Mother's fiancée testify, including being asked directly whether he had coached S.K. to make false accusations about Hurst. The fiancée testified that he had not done so, and had only told the child to tell the truth about what occurred. The jury was in the best position to judge the credibility of all witnesses, including S.K., Hurst, and Mother's fiancée.

{¶19} The verdict demonstrates that the jury did not find Hurst's testimony credible and that it found the state's witnesses credible to prove that Hurst had sexual contact with S.K. Thus, we find that the jury did not clearly lose its way or create a manifest miscarriage of justice when resolving conflicts in the evidence. After reviewing the record, we find Hurst's conviction is not against the manifest weight of the evidence. Hurst's first assignment of error is, therefore, overruled.

{¶20} Assignment of Error No. 2:

{¶21} THE COURT ERRORED [SIC] AND ABUSED ITS DISCRETION WHEN IT PERMITTED AN INCOMPETENT MINOR WITNESS TO TESTIFY.

{¶22} Hurst argues in his second assignment of error that the trial court abused its discretion by permitting S.K. to testify.

{¶23} According to Evid.R. 601(A), "every person is competent to be a witness except: those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." "A child witness who is ten years of age or older at the time of trial, but who was under the age of ten at the time an incident in question occurred, is presumed competent to testify about the event." *State v. Clark*, 71 Ohio St.3d 466, 471 (1994).

{¶24} Absent some articulable concern otherwise, an individual who is at least ten years of age is per se competent to testify. *State v. Swartsell*, 12th Dist. Butler No. CA2002-06-151, 2003-Ohio-4450, ¶ 11. However, the presumption of competency recedes in those cases where a witness is of unsound mind. *Id.* Even so, "some unsoundness of mind does not render a witness incompetent if the witness otherwise possesses the three basic abilities required for competency: the ability to accurately observe, recollect, and communicate that which goes on around him or her." *State v. Cooper*, 139 Ohio App.3d 149, 164 (12th Dist.2000).

{¶25} A reviewing court will not disturb the trial court's finding of competency absent an abuse of discretion. *State v. Sprauer*, 12th Dist. Warren No. CA2005-02-022, 2006-Ohio-1146, ¶ 11. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Id.*

{¶26} At the time of the trial, the child was 11 years old and thus presumed competent. Hurst argues that S.K. was incompetent to testify because he was unable to

- 6 -

differentiate between fantasy and reality. However, after reviewing the record, we find no abuse of discretion in the trial court's determination that S.K. was competent to testify.

{¶27} During the competency hearing, the trial court questioned S.K. to specifically inquire whether the child was of sound mind. The child was able to accurately relate his name, age, details about his schooling, the particulars of his living situation, as well as information about the past, such as Christmas gifts he received the previous year. S.K. also testified that he knew the difference between telling the truth and telling a lie, demonstrated his understanding of the concepts of truth and lies, and also stated it was wrong to tell a lie and that there were repercussions for lying.

{¶28} The trial court also considered testimony from S.K.'s therapist that he knew the difference between truth and lies, and that the child used fantasy as a defense mechanism to protect himself from difficult situations. While Hurst is correct that the child's testimony sometimes contained fantastical stories, such as that his toy could bite, that he kept a ninja sword and guns, and that a giant snake lived in his house, the record indicates that the child told the stories during moments of discomfort and to escape feelings of being unsafe. Otherwise, however, S.K. reiterated time and again that his statements regarding what Hurst did to him were the truth and were not a "story" he told.

{¶29} After reviewing the record, we find the trial court did not abuse its discretion in finding S.K. competent to testify. As such, Hurst's second assignment of error is overruled.

{¶30} Assignment of Error No. 3:

{¶31} THE COURT ERRORED [SIC] WHEN IT VIOLATED THE APPELLANT'S SIXTH AMENDMENT RIGHT OF CONFRONTATION UNDER THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION.

{¶32} Hurst asserts in his third assignment of error that his right of confrontation was violated when the trial court permitted S.K. to testify by way of video deposition instead of live, in-court testimony.

{¶33} According to R.C. 2945.481, a child victim of a sex offense may testify by videotaped deposition without the defendant in the room. The statute requires that the defendant be able to see and hear the child's testimony on a monitor, be provided a means of communication with defense counsel, and that the child be able to see the defendant on a monitor provided for that purpose. R.C. 2945.481(A)(3). The state may move for admission of the deposition testimony if (1) the defendant had the opportunity to develop the testimony by direct, cross, or redirect examination and (2) the trial court determines that there is reasonable cause to believe that if the child were to testify in person he or she would experience "serious emotional trauma" as a result. R.C. 2945.481(B)(1).

{¶34} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provides a criminal defendant with the right to confront the witnesses against him or her. However, face-to-face confrontation in the literal sense is not required by either the federal or state constitutions. *State v. Self*, 56 Ohio St.3d 73 (1990). Instead, the constitutional guarantees inherent in the right to confront witnesses include "the opportunity to cross-examine and the right to observe the proceeding." *Id.* at 79. Thus, the *Self* Court determined that Ohio's statute permitting child victims to testify via deposition does not violate a defendant's confrontation rights so long as the statutory requirements are followed. *Id.*

{¶35} After reviewing the record, we find that Hurst's rights were not violated by the trial court's decision to allow S.K. to testify by deposition. The record indicates that the protocols set forth in R.C. 2945.481 were followed during the child's deposition in that Hurst was able to view the child's testimony through a monitor, Hurst was able to immediately

communicate with defense counsel, and the child, while testifying, was able to view Hurst on a monitor.

{¶36} Hurst argues that the monitor upon which the child could see him was not large enough or positioned closely enough to the witness stand to allow his meaningful presence in the courtroom when S.K. testified. However, the trial court specifically asked S.K. if he could see the monitor and the child indicated that he did. The court then asked the child whether he recognized the person on the screen, and S.K. immediately identified Hurst. Later during his testimony, the child was asked whether he saw Hurst, "right now," and S.K. pointed directly at the screen. Therefore, the monitor upon which Hurst appeared to the child during his testimony was proper and met the statutory requirement that the defendant be viewed by the child-witness during his or her testimony.

{¶37} Regarding the admission of the videotaped testimony in lieu of S.K.'s in-court testimony, the record demonstrates that the statutory requirements were met. First, S.K. was cross-examined by defense counsel during his deposition. Second, the trial court determined that S.K. would suffer severe emotional trauma if required to testify in person. In support of the trial court's finding, it heard testimony from S.K.'s therapist, as well as the therapist's supervisor, that if S.K. were required to testify in court, he would suffer severe emotional trauma. The trial court also considered information from the therapist's case notes, as well as its own observations of the child during S.K.'s videotaped testimony. The court noted that the child became "visibly upset" when asked certain questions, including laying his head down on the witness stand, looking away, and putting his head in his hands.

{¶38} After reviewing the record, we find that the statutory protocol was followed for allowing S.K. to testify via videotaped deposition and that the trial court properly admitted the deposition testimony in lieu of live testimony. As such, Hurst's third assignment of error is overruled.

**{¶39}** Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.