JOURNAL ENTRY and OPINION
This is an appeal following a jury trial before Judge Kathleen Ann Sutula. Defendant-Appellant Walter Scott claims it was error to overrule his motion to suppress evidence, to fail to give certain jury instructions or inappropriately give others, and to deny his motion for judgment of acquittal. He also asserts prosecutorial misconduct during trial and oral argument, and ineffective assistance of counsel. For the reasons that follow, we a f firm.
The record discloses the following. At about 1:30 a.m. on June 3, 1999, Officer Robert Foley, of the Cleveland Police Department, and his partner, Officer John Periandri, were traveling eastbound on Superior Avenue when they observed an old, 1980's Dodge Aries traveling westbound at a high rate of speed. The vehicle turned south on East 85th Street and the officers followed, activating the overhead lights and siren of the zone car. A check of the license plates revealed they were registered to a different vehicle.[1] The Aries did not slow down immediately but proceeded a few blocks and stopped in a driveway, followed by the zone car.
At this point, Scott exited the vehicle, identified himself and indicated that he did not have a driver's license. Scott appeared to be nervous Officer Foley asked him to return to his vehicle and, after checking with dispatch, Foley was advised Scott's license had been suspended and he placed Scott under arrest.
After placing Scott in the zone car, Officer Foley carried out an inventory search of the Aries before it would be towed. He found a .357 magnum on the floor behind the passenger seat under a sweater. He said it lay about eight to ten inches between the seats and that it would be within easy reach of a person in the front seat. When he removed the weapon from the vehicle, he discovered it was fully loaded. He emptied the six rounds and, after he returned to the district station, tagged it.
He admitted he did not have the gun fingerprinted but explained, because Scott was the only person in the vehicle at the time, he was not required to conduct such a test. He also stated that he had no reason to test Scott for the presence of gun powder residue because the gun did not appear to have been fired.
On August 10, 1999, Scott was indicted on one Count of carrying a concealed weapon in violation of R.C. 2923.12 and a second Count of having a weapon while under a disability in violation of R.C. 2923.23. On November 10, 1999, the original trial date, the judge denied Scott's motion to suppress stating it was a boilerplate motion and reset the trial for November 15th.
Before trial, Officer Foley removed the weapon from the property room and test-fired it at the Scientific Investigation Unit. The gun was not registered in the records of the City of Cleveland, and no attempt was made to trace the gun through federal records.
At trial, Melvin Johnson, who had known Scott for ten years, claimed that he was the person who put the gun in the back of the Aries. According to Johnson, he found the loaded gun in a park off of St. Clair Avenue, near a tree and half hidden under some leaves. He wrapped it in a sweatshirt and proceeded to the shop where Scott worked as an auto mechanic. Johnson explained that he went to the shop to test drive the Aries. He put the gun and sweatshirt in the back seat and drove the car for a couple of hours. He returned the car to the shop but forgot to remove the gun from the back seat.
On direct examination, Johnson admitted he had been convicted of felony offenses over ten years earlier. On cross-examination, he admitted to a conviction for robbery in 1994 and that he had been convicted of both grand theft and breaking and entering in 1982.
A deputy clerk and certified copier of the Cuyahoga County Clerk of Courts, testified about the State's exhibit 2, a copy of an August 9, 1990 journal entry in Cuyahoga County Common Pleas Court Case No. CR 244574, which documented Scott's August 9, 1990 conviction for drug abuse. Scott's counsel stipulated to the exhibit after certain portions were redacted.
The jury returned a guilty verdict on Count 1, carrying a concealed weapon in violation of R.C. 2923.12, and Count 2, having a weapon while under a disability in violation of R.C. 2923.13 and Scott was sentenced to 12 months of imprisonment on Count 1 and 9 months on Count 2 to run concurrent with each other. The judgment of conviction was entered on December 16, 1999.[2]
In his first assignment of error, Scott asserts:
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT SUMMARILY OVERRULED DEFENDANT'S MOTION TO SUPPRESS.
Scott argues that because the motion was legally sufficient the judge erred when she concluded that his motion to suppress was "a boilerplate motion" and denied it without a hearing. The State contends that there was no error because Scott failed to state any factual grounds to support his challenge to the stop and search.
It was not error to deny the motion without a hearing. In pertinent part, Crim.R. 47 requires a motion to "state with particularity the grounds upon which it is made." Before a hearing on a motion to suppress evidence is required, "the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." State v. Schindler
(1994), 70 Ohio St.3d 54, 636 N.E.2d 319, syllabus, citing Crim.R. 47 and Xenia v. Wallace (1988), 37 Ohio St.3d 216, 254 N.E.2d 889.
Scott's motion to suppress evidence factually alleged only that there was no probable cause to search his person or vehicle and to confiscate his property. This bare, partial recitation of hornbook law on warrantless searches lacks a sufficient factual basis to put the prosecutor and the judge on notice of the issues to be decided as they related to Scott. See State v. Boone (1995), 108 Ohio App.3d 233, 239,670 N.E.2d 527. Therefore, a hearing on his motion was not required.Schindler, supra. Scott's first assignment of error is overruled.
In his second assignment of error, Scott argues:
 II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT EXPLAIN THE SIGNIFICANCE OF PRIOR CONVICTIONS.
Scott claims that he was denied a fair trial when the judge failed to instruct the jury that his prior drug conviction could only be considered as an element of the offense of having a weapon under a disability and that evidence of Johnson's prior convictions could only go to Johnson's credibility. The State counters that Scott waived this assignment of error because his lawyer did not request a limiting instruction.
We note that Scott's lawyer affirmatively accepted the proposed instructions: "Defendant is comfortable with the instructions, the way they're presently constituted your Honor." His attorney also stated that he had no objection to the charge as read. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332, syllabus; see Crim.R. 51(A).
Contrary to Scott's assertion, the judge did inform the jury that "[t]he charges set in each count in the indictment constitute a separate and distinct matter." The judge further instructed the jury to "consider each count and the evidence applicable to each count separately, and you must state your findings as to each count uninfluenced by your verdict as to any other count." Because the judge gave separate instructions outlining the elements on each count, this additional instruction sufficiently informed the jury that it could only consider Scott's drug abuse conviction as it applied to the disability offense.
With regard to witness Johnson's convictions, the "failure to propose instructions and to object to those given waives any error `unless, but for the error, the outcome of the trial clearly would have been otherwise.'" State v. Taylor (1997), 78 Ohio St.3d 15, 28, 676 N.E.2d 82, citing, in part, Underwood, supra. Scott has not explained how the outcome of the trial clearly would have been otherwise but for the judge's failing to instruct the jury that Johnson's convictions could only be considered as they relate to his credibility. As such, his failure to object and to explain the effect of failing to instruct the jury as such waives any challenge to this alleged error. His second assignment of error is overruled.
In his third assignment of error, Scott asserts:
 III. DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF IMPROPER AND ABUSIVE CROSS-EXAMINATION OF A DEFENSE WITNESS.
Scott argues that the prosecutor's certain, limited questioning of Johnson was improper and prejudicial because it was not within Johnson's province to determine his own credibility. The State claims the prosecutor never expressed his personal opinion about Johnson's credibility and, therefore, the questioning was not improper.
The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether the rights of the accused were materially prejudiced. State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883. It is improper for a prosecutor to express a personal belief regarding the credibility of a witness. Id. It may be proper, however, to ask a witness whether he or she is telling the truth since cross-examination is designed to test truthfulness. State v. Martin (May 3, 1999), Cuyahoga App. No. 73842, unreported.
The cross-examination of Johnson to which Scott complains follows:
Q Where did you learn how to use a gun?
 A Years ago when I — I mean, I done got convicted of a crime, I mean, years ago in the streets.
 Q So you readily admit you've been convicted of crimes before?
A Yes, I have.
Q So it's true that in 1994 you were convicted of robbery?
A Yes.
Q And you were sentenced to two to fifteen years?
A Yeah.
 Q And then in 1982 you were also, isn't it true that you were also convicted of grand theft?
A Yes.
 Q And again in 1982 you were also convicted of breaking and entering?
A Yes.
[DEFENSE COUNSEL]: Objection, your Honor.
THE COURT: Overruled.
BY [THE PROSECUTOR]:
 Q And so if you've been convicted of these crimes why should we believe you? Why should your testimony have any credibility?
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
 A I don't know. It's up — I mean, I came here to tell the truth or whatever, and take responsibility for what I did, right.
Given the context of the testimony as set forth above, we cannot conclude that the prosecutor's direct questioning of Johnson's credibility was improper. Therefore, Scott's third assignment of error is overruled.
In his fourth assignment of error, Scott asserts:
 IV. DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF INFLAMMATORY AND MISLEADING ARGUMENT BY THE PROSECUTOR.
Scott points to four instances were the prosecutor allegedly made improper comments during closing argument. The State responds that Scott's lawyer did not object to the comments and, even so, the comments were not objectionable when taken in context.
As noted above, the test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the rights of the accused were materially prejudiced. State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883, 885. A reviewing court considers the effect the misconduct had on the jury in the context of the entire trial. State v.Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203. "`[[I]]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting State v. Stephens
(1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773, 777; see State v. Smith
(1997), 80 Ohio St.3d 89, 111, 684 N.E.2d 668, 689. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Smith (2000), 87 Ohio St.3d 424, 442, 721 N.E.2d 93,112, quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940,947, 71 L.Ed.2d 78, 87.
Scott first points to comments about his lawyer resorting to "smoke screens" and about Scott being a "veteran criminal":
 And ladies and gentlemen, we have shown you [the elements of the crimes charged.] So who owned the gun, who owned the car, whether there was trace residue on the gun, whether there were fingerprints on the gun, those are smoke screens. And it's brought up by defense counsel so that there will be some doubt in your mind because your charge from the Judge is going to be about reasonable doubt. * * *
* * *
 Well, why didn't they find out who really owned the gun? Well, the police officer testified the gun was unregistered, and besides if they found out who really owned the gun what would that have added to this case? Because the elements that the state has to prove is not who owned the gun, not who owned the car, but whether this defendant knew that the gun was in the car. How do we know that he knew? By his behavior.
 Now, if he had never been charged, this was his only case[,] that would be something. But this is [a] veteran criminal. The reason that he wasn't supposed to have a gun is because he had been convicted before of drugs, and the law said don't have a gun. So if it were a rookie criminal and, you know, he would have acted the way he acted, and was a little unsure and jumped out of the car, or whatever, then it would fly in the face of reason, not in the face, but it would be reasonable, the argument the defense counsel presented. And that was, well, he was nervous. He knew he was about to get arrested because he was driving under suspension.
Scott then points to comments made about Johnson's testimony:
 You're just going to test drive a car, and just forget to tell your friend about the — I just found a set of golf clubs, look at the condition, man, no rust, no nothing. Are you going to do that? I don't think so. * * * Let's talk about a loaded gun. Guns kill people in the hands of other people. A loaded gun, are you going to find a loaded gun, and then go to your friend and leave the loaded gun there and not even say be careful there's a loaded gun in the car? I don't think so. I don't think so.
We note that Scott's lawyer did not object to these statements when made during the prosecutor's rebuttal argument. "When a defendant fails to object to the alleged prosecutorial misconduct, the defendant waives all but plain error." State v. Bey (1999), 85 Ohio St.3d 487, 494,709 N.E.2d 484, citing Crim.R. 52(B). Having reviewed Scott's lawyer's closing argument, these statements outlined above directly responded to the merits of the defense argument. When considered in context, we cannot find that the prosecutor's statements rise to the level of plain error.
Scott also claims that the prosecutor's comments during his closing argument that "Walter Scott knew a weapon was in his car" and that "the State met the burden of showing that defendant knowingly had a gun while he was under a disability" constituted improper expressions of the prosecutor's opinion. Scott's lawyer did not object to these statements and, upon our review, Scott has taken them out of context. They do not express the prosecutor's opinion of Scott's guilt; rather, they were made in the context of summarizing the State's case. We cannot find that these statements rise to the level of plain error.
Finally, Scott points to (what he refers to as) a "misstatement" made by the prosecutor in his closing:
 And you have to consider why should you believe Mr. Johnson, as he testified. He's got a record. This is his record for aggravated robbery —
[DEFENSE ATTORNEY]: Objection.
[THE PROSECUTOR]: — grand theft, and robbery.
THE COURT: Overruled.
Scott claims that the misstatement was improper because the evidence showed only that Johnson had been convicted of robbery, not aggravated robbery. When taken in context, it appears that the prosecutor attempted to correct the misstatement as soon as he made it. Therefore, we cannot conclude that this rises to the level of prejudicial error.
In his fifth assignment of error, Scott asserts:
 V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT CONSTRUCTIVELY AMENDED THE INDICTMENT TO ALLEGE CONSTRUCTIVE POSSESSION.
Scott essentially argues that the judge's instruction on "constructive" in addition to "actual" possession effectively amended the indictment thereby denying him due process of law. The State counters that such a jury instruction presented an essential element of both counts, since possession may be actual or constructive.
While Scott's lawyer did not object to the instruction, we conclude that the judge, as a matter of law, did not "constructively amend the indictment" to include the "constructive possession" of carrying a concealed weapon. This court has previously concluded, in order to "have" a firearm for purposes of R.C. 2923.12 and R.C. 2923.13, one must either actually or constructively possess it. State v. Duganitz (1991),76 Ohio App.3d 363, 369, 601 N.E.2d 642 (carrying a concealed weapon);see State v. Hardy (1978), 60 Ohio App.2d 325, 327, 397 N.E.2d 773
(having weapon under a disability). Because the charges of carrying a concealed weapon and having a weapon under a disability necessarily include either actual or constructive possession of a deadly weapon or dangerous ordnance, the judge did not amend the indictment by instructing the jury on constructive possession. Scott's fifth assignment of error is overruled.
In his sixth assignment of error, Scott asserts:
 VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT INSTRUCTED ON A PRESUMPTION WHICH WAS TOTALLY INAPPLICABLE OF THIS CASE.
Scott argues that, since he was not charged with a drug offense, the judge inappropriately instructed the jury concerning the "sale" and "administration" of drugs. The State again points out that Scott's lawyer did not object to the instruction and, in addition, argues that the instruction was proper because it went to the elements of having a weapon under a disability, which included the elements of the underlying drug abuse conviction.
As we noted above, Scott's lawyer accepted the instructions as proposed and specifically indicated that he had no objection to the instructions as given, and such failure to object to a jury instruction constitutes a waiver of any claim of error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Underwood (1983),3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus.
R.C. 2923.13(A)(3) provides in pertinent part,
 Unless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense, that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
Because Scott stipulated to the conviction, the additional instruction on "sale" and "administration" was redundant. We cannot conclude, however, that the outcome of the trial clearly would have been different if the definition of "sale" and "administration" were not given to the jury. This sixth assignment of error is, therefore, waived.
Having a common basis in law and fact, we will address Scott's seventh and eighth assignments of error together:
 VII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL WAS OVERRULED FOR THE OFFENSE OF CARRYING A CONCEALED WEAPON.
 VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS NOT GRANTED A JUDGMENT OF ACQUITTAL AS TO THE OFFENSE OF HAVING A WEAPON UNDER A DISABILITY.
Scott argues that the State failed to produce evidence showing beyond a reasonable doubt that he possessed or controlled the gun. He argues that the State did not take fingerprints on the gun, that the sweater found on the floor of the car was not taken into evidence, and that no tests were taken of his hands. With regard to the disability count, he contends that the State failed to produce evidence showing that he knowingly possessed the gun. The State claims it submitted sufficient evidence to satisfy the elements of both crimes.
"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus; accord State v.Cantin (1999), 132 Ohio App.3d 808, 811, 726 N.E.2d 565.
As noted above, R.C. 2923.12(A) provides that "[n]o person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance." Like R.C. 2923.12(A), R.C. 2923.13(A)(3) also requires the elements of knowledge and possession:
 Unless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.
With regard to the element of knowledge, the testimony showed that Scott did not immediately slow his vehicle or pull to the side of the road when the officers turned on their siren and lights. After he stopped the Aries, however, he immediately exited, approached the officers, and admitted to driving under a suspended license. The officers described him as "nervous," and his furtive actions were circumstantial evidence that he knew of the presence of the gun and attempted to avoid its detection.
With regard to the element of possession, the facts in the present case are similar to those in State v. Dugantz (1991), 76 Ohio App.3d 363,601 N.E.2d 642, where we found the evidence insufficient to sustain Dugantz' convictions. Dugantz, however, was accompanied by a passenger, the gun was found under a blanket on the seat between them, and the passenger had remained in the vehicle for at least one minute while Dugantz stood with the officers outside of the car. In the present matter, the State's evidence showed that Scott was the sole occupant of the vehicle at the time of the arrest and that the gun was found wrapped in a sweater behind the passenger seat on the floor within eight to ten inches of the driver. The additional evidence tending to support the element of "knowledge" also tended to show "possession."
We conclude, therefore, that the State presented evidence such that reasonable minds could reach different conclusions about whether the elements of knowledge and possession were proven beyond a reasonable doubt. The seventh and eighth assignments of error are overruled.
In his ninth assignment of error, Scott argues:
 IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF CARRYING A CONCEALED WEAPON WHEN THERE WAS NO FINDING AS TO THE ADDITIONAL ELEMENT WHICH WOULD ELEVATE THE OFFENSE TO A FELONY.
R.C. 2923.12(D) provides that a person who is found guilty of carrying a concealed weapon, a misdemeanor of the first degree. However, "[i]f the offender previously has been convicted of a violation of this section or of any offense of violence, if the weapon involved is a firearm that is either loaded or for which the offender has ammunition ready at hand, or if the weapon involved is a dangerous ordnance, carrying concealed weapons is a felony of the fourth degree." R.C. 2923.12(D).
Scott claims that the jury was never asked to determine whether the firearm was loaded or the ammunition was "ready at hand" and, therefore, he could only be guilty of and sentenced for a first-degree misdemeanor. The State counters that Scott's lawyer never objected to the instruction and, thus, waived any error.
Scott's lawyer did not object but acceded to the instructions as given. While we agree there was no objection to the instruction, the judge did ask the jury, within the context of the total charge, to determine whether Scott knowingly carried a "loaded firearm." As such, the assignment of error is overruled.
In his tenth assignment of error, Scott asserts:
 X. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
Scott first argues that, if this court decides that the judge correctly overruled the motion to suppress because it was legally insufficient, then his lawyer was constitutionally ineffective. He also claims that he was rendered ineffective assistance because his lawyer failed to object to both improper jury instructions and the prosecutor's closing argument, and failed to request instructions regarding the jury's consideration of prior convictions. The State asserts that Scott's attorney rendered effective assistance.
This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. State v. Tollivar (July 31, 1997), Cuyahoga App. No. 71349, unreported; see State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990),497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 830. Under Strickland, a reviewing court will not deem the attorney's performance ineffective unless the defendant can show that the attorney's performance fell below an objective standard of reasonable representation and that prejudice arose from the attorney's deficient performance. Bradley,42 Ohio St.3d 136, 538 N.E.2d 373 at paragraph one of the syllabus. Judicial scrutiny of the defense attorney's performance must be highly deferential, and the reviewing court must refrain from second-guessing the lawyer's trial strategy. State v. Sallie (1998), 81 Ohio St.3d 673,674, 693 N.E.2d 267; State v. Williams (1991), 74 Ohio App.3d 686, 695,600 N.E.2d 298, 304, dismissed, motion overruled (1991) 62 Ohio St.3d 1463,580 N.E.2d 784. "`[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . .'" Bradley, 42 Ohio St.3d at 142,538 N.E.2d at 379-380, quoting Strickland, 466 U.S. at 689.
To show prejudice resulting from the attorney's performance, the defendant must prove that, if not for the attorney's errors, a reasonable probability exists that the result of the proceedings would have been different. Bradley, supra at paragraph three of the syllabus; State v.Girts (1997), 121 Ohio App.3d 539, 559, 700 N.E.2d 395, discretionary appeal not allowed (1997), 80 Ohio St.3d 1424, 685 N.E.2d 237.
We recently addressed an ineffective assistance of counsel claim in the context of filing a motion to suppress in State v. Guy (Dec. 2, 1999), Cuyahoga App. No. 74457, unreported.
 "Although a defendant's constitutional right to effective assistance does not require defense counsel to file a motion to suppress in every case, State v. Flors (1987), 38 Ohio App.3d 133, 139, 528 N.E.2d 950, 956-957, where there exists reasonable grounds for filing a motion to suppress, counsel's failure to file the motion may constitute ineffective assistance and warrant a reversal. State v. Garrett (1991), 76 Ohio App.3d 57, 63, 600 N.E.2d 1130, 1134." [Id.,
quoting State v. Payton (1997), 119 Ohio App.3d 694, 704, 696 N.E.2d 240.]
In addition, "`[a] criminal conviction will not be reversed on the ground of ineffective assistance of counsel solely because defense counsel failed to file a timely motion to suppress evidence, where the record does not demonstrate that the evidence was illegally obtained.'"State v. Hodges (1995), 107 Ohio App.3d 578, 588, 669 N.E.2d 256, 263, quoting State v. Gibson (1980), 69 Ohio App.2d 91, 430 N.E.2d 954, paragraph two of the syllabus.
In the present case, Scott's lawyer filed a timely motion to suppress but, as we concluded earlier, it lacked a sufficient factual basis to put the prosecutor and the judge on notice of the issues to be decided as they relate to Scott. As the Supreme Court recently explained in Statev. Mesa (1999), 87 Ohio St.3d 105, 108-109, 717 N.E.2d 329,
 Inventory searches are a "well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine (1987), 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L. Ed. 2d 739, 745. See, also, South Dakota v. Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000. Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities. Opperman, 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated. Id. at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1006, fn. 5. See, also, Bertine, 479 U.S. at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745. Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness. See Opperman and Bertine, supra.
See, also, North Olmsted v. Szucs (May 11, 2000), Cuyahoga App. No. 75662, unreported.
Based upon the foregoing, we cannot reverse this action for the reason that Scott's lawyer failed to write a "legally sufficient brief" when the record does not demonstrate that the evidence was illegally obtained.Hodges, supra.
With regard to the argument about his lawyer's failure to object to both improper jury instructions and the prosecutor's closing argument, and his failure to request instructions regarding the jury's consideration of prior convictions, Scott has not overcome the strong presumption that his lawyer's conduct falls within the wide range of reasonable professional assistance. Bradley, 42 Ohio St.3d at 142. Even if we concluded that such satisfied the first element of the Strickland
test, Scott has not shown prejudice resulting from his lawyer's performance. Id. at paragraph three of the syllabus. Therefore, his tenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., AND LEO M. SPELLACY, J. CONCUR
[1] At trial, neither officer was able to identify the owner of the Dodge Aries, but Officer Periandri indicated it was a woman from Richfield, Ohio.
[2] The judgment contains a clerical error indicating that Scott had pleaded guilty to both counts.