The STATE of Ohio, Appellee,

v.

HODGES, Appellant.

[Cite as *State v. Hodges* (1995), 107 Ohio App.3d 578.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–95–16.

Decided Nov. 29, 1995.

---

**4.** This rule does not necessarily apply to third persons who did not assume the risk of a tortfeasor's intoxication.

580

*John W. Allen,* Special Prosecuting Attorney, for appellee.

*Harry R. Reinhart; Lange & Behm* and *Dean Henry,* for appellant.

SHAW, Judge.

Defendant-appellant, Douglas Hodges, appeals a judgment of conviction and sentence entered by the Seneca County Court of Common Pleas, following a jury trial in which defendant was found guilty of felonious assault, sexual battery and sexual imposition.

The record reveals that in 1989, defendant was an Episcopalian priest at Trinity Episcopal Church in Fostoria. In addition to his occupation as a priest, defendant was a therapist at The Counseling Center in Fostoria. Shelley LeBay first met defendant when she started to attend Trinity Episcopal Church in 1989. Shortly after LeBay began to attend Trinity Episcopal Church, she began to consult defendant in his capacity as priest concerning problems she was experiencing with her sexually abusive husband. Defendant advised LeBay that he was a therapist and that she should start therapy with him at The Counseling Center.

In January 1991, LeBay began to visit regularly with defendant at The Counseling Center for counseling sessions. Prior to being treated by defendant, LeBay had a prior history of psychiatric illness which included three hospitalizations for problems including major depression, anxiety disorder and personality disorders. After LeBay began consulting defendant, he began to engage in sexual contact with her during therapy sessions. For instance, at first, defendant would hug and kiss LeBay. In addition, defendant would touch LeBay's neck, shoulders, breasts and pelvic area under the guise that he was feeling her for "stress points."

On October 6, 1991, LeBay missed a counseling session with defendant. As a result, defendant called LeBay at her home and asked her to come to the Trinity Episcopal Church to see him. When LeBay arrived, defendant asked her to sit on his lap. When she obliged, defendant began to kiss her and fondle her breasts. Defendant then undressed LeBay and the two engaged in oral sex and

sexual intercourse. After engaging in sexual intercourse, defendant told LeBay that "he'd have a lot to lose if she told anyone" about their encounter. LeBay apparently promised defendant that the encounter would be between "me, him and God."

On December 1, 1991, apparently in response to her sexual encounter with defendant, LeBay carved the word "repent" in her arm with a razor blade and was hospitalized. In April 1992, LeBay contacted Carol Reffner, a Fostoria City Prosecutor, to complain about defendant's conduct. Reffner told LeBay that she was unable to handle the case and that she should refer the incident to the police. Consequently, LeBay contacted Father Don Schaub of the Episcopalian Church and told him about the sexual encounter with defendant. Defendant was confronted by his church superiors about his encounter with LeBay and he eventually admitted having sex with her. Defendant was then removed from the church as an Episcopalian priest.

After defendant's removal from the church, he became a special deputy with the Seneca County Sheriff's Office in May 1992. In September 1992, defendant approached Chief Deputy Richard Dohner in the Sheriff's Office and told him that a woman was accusing him of rape and that he believed it was a money issue. In October 1992, LeBay filed a civil lawsuit against defendant relating to her sexual encounter with defendant. After LeBay filed her civil lawsuit, three other women came forward and alleged that defendant had engaged in similar attempts of sexual misconduct in his capacity as their therapist. In February 1993, defendant was arrested by the Seneca County Sheriff's Office.

On February 29, 1993, defendant was indicted on two counts of felonious assault in violation of R.C. 2903.11, three counts of sexual imposition in violation of R.C. 2907.06(A)(2), two counts of attempted sexual battery in violation of R.C. 2923.02 and 2907.03 and one count of sexual battery in violation of R.C. 2907.03(A)(2). Three counts of the indictment relate to defendant's actions with respect to Shelley LeBay, and the remaining five counts relate to defendant's conduct in the treatment of Lana Pahl, Theresa Cool and Debra Swihart.

On January 31, 1994, the case proceeded to a jury trial. On February 11, 1994, the jury found defendant guilty of three counts of sexual imposition in violation of R.C. 2907.06(A)(2) in the course of treating Theresa Cool, Debra Swihart and Shelley LeBay, one count of sexual battery in violation of R.C. 2907.03(A)(2) and one count of felonious assault in violation of R.C. 2903.11, both counts relating to defendant's treatment of Shelley LeBay. Defendant was found not guilty of one count of felonious assault in violation of R.C. 2903.11 and two counts of attempted sexual battery in violation of R.C. 2923.02 and 2907.03.

Thereafter, defendant filed the instant appeal, asserting the following four assignments of error:

"I. The trial court erred to the substantial prejudice of the defendant by failing to grant the motion for a new trial when it was established that agents of the state intentionally suppressed material exculpatory and impeachment evidence and affirmatively deceived defense counsel about the existence of the same.

"II. The trial court erred to the substantial prejudice of the defendant by overruling his motion for a judgment of acquittal on the charge of felonious assault.

"III. The trial court erred to the substantial prejudice of the defendant by overruling his motion for a new trial and by failing to grant his request for an evidentiary hearing thereupon.

"IV. The defendant was denied the effective assistance of counsel to which he was entitled under the Sixth and Fourteenth Amendments to the United States Constitution as well as Section 10, Article 1 of the Ohio Constitution."

With respect to defendant's first assignment of error, the record indicates that Shelley LeBay's first contact with law enforcement authorities was through a telephone call to Fostoria City Prosecutor Carol Reffner. Defendant claims that LeBay initially told Reffner that she had engaged in sex with a priest but that the priest was from St. Wendelin Catholic Church and not Trinity Episcopal Church, where defendant was a priest. Defendant further claims that this telephone conversation was recorded and that Reffner's statements directly contradict LeBay's trial testimony where she claimed that the priest she had sex with was not a Catholic priest. Thus, defendant argues, since Reffner's recollection of her telephone conversation with LeBay contradicted LeBay's trial testimony, the state committed prosecutorial misconduct by failing to disclose the contents of that conversation, which constituted material exculpatory evidence.

In addressing the prosecution's suppression and nondisclosure of evidence, the Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218; see, also, *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898. The prosecution is also required to produce impeachment evidence under this rule. *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. However, evidence is considered material under *Brady, supra,* only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

■ The record contains a taped telephone conversation between Carol Reffner and Detective James Browning of the Seneca County Sheriff's Office in which Reffner told Browning that LeBay claimed she had sex with a priest from St. Wendelin Church. The record also contains an affidavit of Carol Reffner in which she also stated that LeBay had told her that she had sex with a priest from St. Wendelin Church. At trial, LeBay testified that there was an incident of sexual misconduct between a priest and herself but that the priest was not a Catholic priest. Thus, defendant argues, the nondisclosed conversation between Detective Browning and Carol Reffner raises a question as to whether LeBay had sexual intercourse with a priest who was not a Catholic priest or a priest from St. Wendelin Church.

Our review of the record indicates that with respect to the identity of the priest involved in the sexual misconduct, defendant made at least three separate admissions that he had had sex with LeBay. The trial testimony reveals that defendant told his church superiors and Chief Deputy Dohner that he had had sexual intercourse with LeBay. In addition, defendant admitted having sex with LeBay in a tape recorded statement to the police following his arrest. Furthermore, defendant's identity was corroborated by LeBay's trial testimony as well as her statements to her social worker and occupational therapist. In light of defendant's multiple admissions and LeBay's testimony, coupled with the fact that there is no evidence aside from Reffner's statements that LeBay had ever had a sexual encounter with a Catholic priest, we conclude that there is not a reasonable probability that the outcome of the trial would have been different had such evidence been disclosed at trial. Accordingly, defendant's first assignment of error is overruled.

In defendant's second assignment of error, he contends that he was entitled to a judgment of acquittal on the charge of felonious assault in violation of R.C. 2903.11(A)(1) because LeBay consented to sexual intercourse and because there was no evidence that LeBay suffered serious physical harm.

■ The test of a Crim.R. 29 motion for acquittal is whether reasonable minds could reach differing conclusions about whether the elements of a crime were proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401, 401–402, 381 N.E.2d 184, 185. Defendant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that no person shall knowingly cause serious physical harm to another. R.C. 2901.01(E) defines serious physical harm to persons as any of the following:

"(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(2) Any physical harm which carries a substantial risk of death;

"(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;

"(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

"(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."

At trial, Shelley LeBay, who was under defendant's care as a therapist for psychological problems including sexual abuse, testified that on October 6, 1991, she went to Trinity Episcopal Church to meet with defendant after he called her at her home and told her he was worried about her. Once at the church, LeBay testified that defendant forced her to sit on his lap and that he undressed her and manipulated her into a position to perform oral sex and eventually intercourse. LeBay testified that she did not physically resist defendant's sexual advances but that she verbally resisted by telling him, "No, this is wrong." Defendant told LeBay to keep their encounter a secret between "you, me and God." However, on December 1, 1991, LeBay told a friend about the encounter. On that same day she carved the word "repent" into her arm with a razor blade and was admitted to the psychiatric unit of Fremont Hospital.

In addition to Shelley LeBay's testimony, three mental health practitioners offered testimony at trial regarding the cause and nature of LeBay's December 1991 psychiatric hospitalization. Dr. Donald Evert, a psychiatrist who treated LeBay prior to December 1991, opined that based on a reasonable degree of medical certainty, the sexual intercourse with defendant caused serious physical harm resulting in LeBay's hospitalization. Dr. Evert further stated that the sexual intercourse with defendant could have caused serious physical harm even in light of additional psychological stressors present in LeBay's life. In addition to Dr. Evert, Dr. Jean Molitor, LeBay's psychiatrist at the time of trial, testified that based on a reasonable degree of medical certainty, LeBay's sexual encounter with defendant caused her December 1, 1991 hospitalization, despite the presence of other stressors in her life. Finally, Laura Fenwick, a social worker who completed LeBay's initial interview upon admission to the hospital, stated that LeBay was admitted to the hospital primarily due to guilt and confusion over a recent affair with the Episcopal priest who was her therapist.

Based on the foregoing, we believe that reasonable minds could have concluded that as LeBay's therapist and priest, defendant knowingly caused her to suffer serious physical harm within the meaning of R.C. 2903.11 and 2901.01(E). See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. LeBay sought treatment from defendant regarding personality disorders and sexual abuse she

had suffered in her marriages. Thus, the jury could have reasonably concluded that, as LeBay's priest and therapist, defendant was aware his conduct would probably result in certain physical harm to LeBay, regardless of whether LeBay consented to sexual intercourse. The jury could have further reasonably concluded, based on the trial testimony, that defendant's conduct resulted in a "mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." R.C. 2901.01(E)(1). Accordingly, defendant's second assignment of error is overruled.

In defendant's third assignment of error, he argues that the trial court erred in overruling his motion for a new trial. Defendant asserts that he was entitled to a new trial or at least a hearing to make such a determination, based on the fact that the state withheld exculpatory evidence and that a conflict of interest existed because the county prosecutor had represented defendant in the civil suit filed against him by Shelley LeBay.

The granting or denial of a new trial rests within the sound discretion of the trial court and its ruling will not be disturbed by a reviewing court in the absence of an abuse of discretion. *McKiernan v. Home Savings of Am.* (1994), 93 Ohio App.3d 13, 637 N.E.2d 384. As set forth in our disposition of defendant's first assignment of error, defendant was not entitled to a new trial based on the state's nondisclosure of the Carol Reffner affidavit and transcript evidence because such evidence was not material within the meaning of *Brady v. Maryland, supra.* Furthermore, while the purported exculpatory evidence presented by defendant may constitute impeaching or contradictory evidence, it does not create a strong possibility of a different result and thus does not necessitate a new trial. *State v. Wright* (1990), 67 Ohio App.3d 827, 588 N.E.2d 930. Accordingly, the trial court did not err in failing to grant a new trial in that respect.

In addressing defendant's contention regarding the existence of a conflict of interest between the prosecutor's office and defendant, defendant claims that he was represented by Seneca County Prosecutor Paul Kutscher in the civil case filed against him by Shelley LeBay prior to the commencement of the instant criminal proceedings. Thus, defendant argues, the prosecutor's office was privy to privileged and confidential information which it utilized in the criminal investigation against defendant.

Upon review of the record, it is our conclusion that defendant's claim that a conflict of interest warranted the granting of a new trial is without merit. Defendant argues that Jerome Kiser, an investigator and legal assistant in the Prosecutor's Office, continued to assist in the prosecution of this case even after the appointment of Special Prosecutor John Allen of Mansfield. However, the record contains affidavits from John Allen, Jerome Kiser and Paul Kutscher

which establish that Kutscher appointed John Allen as a special prosecutor shortly after the investigation into defendant's conduct began and that no privileged or confidential information was ever divulged to attorney Allen or Jerome Kiser. Thus, as the trial court correctly found in its journal entry denying defendant's motion for a new trial and request for an evidentiary hearing, defendant points to no specific breach of the attorney-client privilege.

Finally, we should point out that defendant cites *State v. Gillard* (1992), 64 Ohio St.3d 304, 595 N.E.2d 878, for the proposition that a trial court has an affirmative duty to inquire as to whether a conflict of interest exists when the court knows or reasonably should know of an attorney's possible conflict of interest. However, *Gillard* appears to apply to those situations where a potential conflict of interest jeopardizes a criminal defendant's Sixth Amendment right to counsel, such as the dual representation of criminal defendants, which is not at issue in the instant case. Accordingly, as the trial court did not abuse its discretion in denying defendant's motion for a new trial or evidentiary hearing, defendant's third assignment of error is overruled.

In defendant's fourth and final assignment of error, he argues that he was provided with ineffective assistance of counsel. More specifically, defendant asserts that trial counsel was denied pretrial discovery of exculpatory impeachment evidence, that trial counsel should have moved to suppress defendant's tape recorded statements and that counsel should have objected to the playing of defendant's tape recorded statement at trial. In addition, defendant argues that trial counsel failed to object to evidence of other bad acts, failed to raise the issue of consent as a defense to felonious assault, failed to raise the issue of conflict of interest and failed to request a jury instruction requiring the jury to find that defendant was the sexual aggressor in order to convict him.

 The standard for appellate review of a claim of ineffective assistance of counsel in Ohio as stated in *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476, 478–480, is as follows:

"In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301, 31 O.O.2d 567, 568, 209 N.E.2d 164, 166. The appellant bears the burden of proving that his trial counsel was ineffective. To carry this burden, appellant must show that counsel made errors so serious that counsel failed to function as the 'counsel' guaranteed by the Sixth Amendment. *Strickland v. Washington* (1984), 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693]. Appellant must also demonstrate that the deficient performance prejudiced his defense. To establish prejudice, appellant must show that there is a reasonable probability that but for counsel's mistakes, the result of the trial would have been different. *Strickland, supra.*"

With respect to defendant's contention that his counsel was ineffective because of the suppression or nondisclosure of Carol Reffner's statements, as we have previously noted, those statements were not sufficiently material to have an impact on the outcome of the trial. Thus, the omission of those statements did not render trial counsel ineffective. With respect to defendant's claim regarding his trial counsel's failure to move to suppress defendant's audiotaped statements following his arrest, the record contains the testimony of Chief Deputy Dohner, who testified that defendant did receive his Miranda warnings, although those warnings were not reflected by the tape itself. Because the tape in question was only played to the jury and not admitted into evidence, Deputy Dohner's testimony is the only record before this court which reflects the contents of the tape. It is well established that "[a] criminal conviction will not be reversed on the ground of ineffective assistance of counsel solely because defense counsel failed to file a timely motion to suppress evidence, where the record does not demonstrate that the evidence was illegally obtained." *State v. Gibson* (1980), 69 Ohio App.2d 91, 23 O.O.3d 130, 430 N.E.2d 954, paragraph two of the syllabus; *State v. Ward* (Aug. 17, 1992), Allen App. No. 1–91–63, unreported, 1992 WL 198134. The record does not support defendant's contention that his pretrial statements were illegally obtained. Thus, defendant's claim that his counsel erred in failing to move to suppress those statements is without merit.

Furthermore, with respect to defendant's contention that his counsel erred in failing to object to the playing of his audiotaped statements to the jury, we find such a decision reasonable in light of the fact that defendant did not take the stand in his own defense. Thus, while such trial tactics may have been debatable, they did not constitute a deprivation of the effective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 37–38, 402 N.E.2d 1189, 1192. Similarly, we find defense counsel's failure to utilize consent as a defense and his failure to request a jury instruction that Shelley LeBay was the sexual aggressor to be decisions well within the range of professionally reasonable judgment. *Strickland, supra.*

In addressing defendant's contention that counsel failed to raise the issue of a conflict of interest within the Prosecutor's Office, as we have noted in our disposition of defendant's third assignment of error, the record contains no evidence of a conflict of interest. Thus, defense counsel did not err in failing to raise that issue.

Finally, defendant argues that his counsel erred in failing to object to the admission of "other bad acts" evidence as well as the admission of defendant's noncustodial statements to Chief Deputy Dohner during an employment background check. With respect to counsel's alleged failure to object to the admission of other bad acts evidence, the only specific instance defendant points to relates

to the admission of a letter written by defendant renouncing his holy orders as an Episcopalian priest. Contrary to defendant's assertions, the record indicates that defense counsel did object to the introduction of this exhibit at trial on the basis of relevancy. Thus, there was no error on the part of counsel in that respect. Moreover, in reviewing defendant's claim that counsel should have moved to exclude statements made to Chief Deputy Dohner, the record contains no legal basis for their exclusion. Accordingly, based on the foregoing facts and authorities, we hold that defendant has failed to establish that his counsel was ineffective within the meaning of *Strickland v. Washington, supra.* Defendant's fourth assignment of error is overruled.

In summary, defendant's four assignments of error are overruled and the judgment of conviction and sentence entered by the Seneca County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

EVANS and HADLEY, JJ., concur.