DECISION AND JUDGMENT ENTRY
This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. The jury found Joseph Churchill, defendant below and appellant herein, guilty of (1) complicity to breaking entering, in violation of R.C. 2911.13(A); (2) theft, in violation of R.C. 2913.02; (3) safe cracking, in violation of R.C. 2911.31; and (4) possession of criminal tools, in violation of R.C. 2923.24.
The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO CHALLENGE THE SEARCH WARRANT AND ASSERT MR. CHURCHILL'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
SECOND ASSIGNMENT OF ERROR:
 "MR. CHURCHILL'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO OBJECT TO POLICE OFFICER'S ACCOUNT OF THE CONTENTS OF A VIDEOTAPE IN VIOLATION OF THE BEST EVIDENCE RULE."
In the early hours of January 25, 2001, Ohio State Highway Patrol Trooper John Allard was patrolling U.S. Route 62 near the Pickaway County-Franklin County Line when he observed a tan colored conversion van make a u-turn in the middle of an adjacent roadway. Trooper Allard turned to follow the van and noted that the rear of the vehicle did not display a license plate. After Trooper Allard signaled the van to stop, he exited his cruiser and approached the van. Trooper Allard then asked appellant to produce his driver's license and proof of registration.
After informing appellant he did not have a proper license plate, Trooper Allard issued an "HP2" (warning) ticket. The officer then asked appellant about his destination. Appellant responded that he was going to Washington Courthouse. Trooper Allard informed appellant that he was travelling in the wrong direction, and told him to take Route 62 south.
Appellant took the warning ticket and then drove toward Washington Courthouse. Trooper Allard was somewhat suspicious about this encounter and he decided to follow appellant for a few miles. Shortly thereafter, Trooper Allard pulled ahead of the van and drove on.
Several miles down the road, Trooper Allard passed a cruiser driven by Pickaway County Sheriff's Deputy Brian Greiner. Trooper Allard radioed Deputy Greiner and asked him to report whether he observed a van following behind him. Deputy Greiner replied that he did not see anything and the two officers met at a nearby intersection to discuss the matter.
At approximately 2:25 AM, the officers heard a radio report that an alarm signal had sounded at nearby "Joseppi's Pizza." Deputy Greiner was the first officer on the scene and he observed that the front door had been pried open and that some of the store's contents had been disturbed. Further investigation revealed that a lock-box type safe, together with money and checks, were missing and presumed stolen. Suspicion immediately settled upon appellant and the investigating officers notified the Columbus Police Department.[1]
Subsequently, several officers were dispatched to "guard" appellant's residence while authorities continued to investigate. Officer Dave Foster stood watch in front of appellant's residence when appellant's wife approached him and asked if he would accompany her inside. Appellant's wife apparently wished to retrieve one of her children. Officer Foster complied with her request and, once inside, observed a safe, located in the kitchen, covered with a bed sheet.
That same morning, Pickaway County Sheriff's Department Detective Sergeant Dale Parrish viewed a security camera videotape at the Ameristop Mini-Mart. The Mini-Mart is located next door to Joseppi's Pizza and one of the mini-mart security cameras pointed into the parking lot that it shared with Joseppi's. The video tape revealed a vehicle in the Joseppi's lot at approximately 2:24 AM, and leave the premises four minutes later. Although the tape was of poor quality and a positive identification could not be made, the vehicle on the tape in the Joseppi's lot appeared to be a van.
Meanwhile, Pickaway County Sheriff's Department Detective Rex Emrick arrived at appellant's Columbus residence. Deputy Emrick approached a van that matched the description of the van that appellant had been driving and after looking in a window, observed a hammer and various crowbars.
All of the information from Trooper Allard, Officer Foster and Deputies Greiner and Emrick was included in an affidavit written by Deputy Parrish, together with his own findings, and submitted in support of a request for a warrant to search appellant's residence. Later that day, the Franklin County Municipal Court issued a warrant. When Columbus Police and Pickaway County Sheriff's Deputies executed the search warrant, officers found the numerous items from Joseppi's Pizza, including the safe (which had been pried open), cash and checks made payable to that establishment. Appellant was thereafter taken into custody.
On February 2, 2001, the Pickaway County Grand Jury returned an indictment charging appellant: (1) breaking entering, in violation of R.C. 2911.13(A); (2) theft, in violation of R.C. 2913.02; (3) safe cracking in violation of R.C. 2911.31; and (4) possession of criminal tools in violation of R.C. 2923.24. Appellant pled not guilty on all counts and the matter came on for jury trial on April 16, 2001.
At trial, Trooper Allard and the investigating officers all related their version of the events in question. Moreover, Charles Thompson, the owner of Joseppi's Pizza, testified that the items retrieved from appellant's home during the search were taken from his establishment. The defense elected to put on no evidence.
After hearing the evidence and counsels' arguments, the jury returned guilty verdicts on all four counts.[2] On April 19, 2001, the trial court imposed the following prison sentences: (1) twelve months for complicity to breaking entering; (2) twelve months for theft; (3) eighteen months for safe cracking; and (4) twelve months for the possession of criminal tools. The trial court further ordered that the sentences be served consecutively for a total four and one half (4½) year sentence.[3] This appeal followed.
 I
In both of appellant's assignments of error, the gist of his argument is that he received ineffective assistance from trial counsel. We note at the outset of our review that, in order to obtain the reversal of a conviction on grounds of ineffective assistance of counsel, appellant must show that (1) counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial. See Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693, 104 S.Ct. 2052, 2064; also see State v. Issa (2001),93 Ohio St.3d 49, 67, 752 N.E.2d 904, 924; State v. Goff (1998),82 Ohio St.3d 123, 139, 694 N.E.2d 916, 929; State v. Loza (1994),71 Ohio St.3d 61, 83, 641 N.E.2d 1082, 1105. Licensed attorneys are presumed competent. See State v. Lott (1990), 51 Ohio St.3d 160, 174,555 N.E.2d 293, 303; State v. Smith (1985), 17 Ohio St.3d 98, 100,477 N.E.2d 1128, 1131, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301,209 N.E.2d 164, 166. Moreover, when an appellate court reviews ineffective assistance of counsel claims, courts are admonished to be "highly deferential" to trial counsel's performance, indulge a "strong presumption" that his or her conduct falls within the wide range of reasonable professional assistance and refrain from "second-guessing" counsel's strategic decisions at trial. See State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965, 977; State v. Frazier (1991),61 Ohio St.3d 247, 253; 574 N.E.2d 483, 488; State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379. We further point out that defendants are not constitutionally entitled to an error free trial. SeeUnited States v. Hastings (1983), 461 U.S. 499, 508-509, 76 L.Ed.2d 96,106, 103 S.Ct. 1974, 1980; also see State v. Strong (Aug. 17, 2001), Lawrence App. No. 00CA35, unreported; In re Smith (Dec. 12, 2001), Ross App. No. 01CA2599, unreported. Rather, they are only entitled to a fair trial. State v. Huckabee (Mar. 9, 2001), Geauga App. No. 99-G-2252, unreported. With these principles in mind, we turn our attention to the specific arguments raised by appellant in his two assignments of error.
 II
In his first assignment of error, appellant asserts that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence seized from his home. We disagree.
It is well-settled law that the failure to file a motion to suppress is not per se indicative of ineffective assistance of counsel. See Kimmelmanv. Morrison (1986), 477 U.S. 365, 384, 91 L.Ed.2d 305, 325,106 S.Ct. 2574, 2587; State v. Madrigal (2000), 87 Ohio St.3d 378, 721 N.E.2d 52. Appellant must show, inter alia, that the motion would have had a reasonable probability of success. See State v. Nields (2001),93 Ohio St.3d 6, 34, 752 N.E.2d 859, 891-892. Thus, a conviction will not be reversed on appeal unless the record shows that the evidence taken from his home was illegally obtained. State v. Hodges (1995),107 Ohio App.3d 578, 588, 669 N.E.2d 256, 263; State v. Blagajevic
(1985), 21 Ohio App.3d 297, 299-300, 488 N.E.2d 495, 499; also see Statev. Hoover (Dec. 17, 2001), Stark App. No. 2001CA138, unreported; Statev. Scott (Dec. 14, 2000), Cuyahoga App. No. 77461, unreported. When the record is unclear or lacks sufficient evidence to establish that a suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established. State v. Hoover (Dec. 17, 2001), Stark App. no. 2001CA138, unreported.
In the instant case, appellant argues that the evidence seized from his house was taken illegally because the search warrant was defective. We find no merit to that argument. Deputy Parrish submitted an extensive four-page affidavit with his request for a search warrant. That affidavit set forth specific facts known to him and to the other investigating officers. This was not a "bare bones" or "conclusory" affidavit. Deputy Parrish explained that a warrant was justified for the following reasons:
 (1) Trooper Allard had stopped appellant in the middle of the night near the location of Joseppi's Pizza and, although appellant claimed he was traveling to Washington Courthouse, he was not driving in the direction of that city, nor did he continue driving in the direction of that city after Trooper Allard let him go and subsequently passed him on U.S. Route 62.
 (2) Officer Foster was asked by Mrs. Churchill to accompany her inside the family residence to retrieve a child and, once inside, the Officer observed a safe in the kitchen covered by a bedsheet.
 (3) Deputy Emrick observed a "pry tool" in plain view inside appellant's van which was consistent with the sort of tool used to remove the safe from Joseppi's Pizza.
 (4) Deputy Parrish viewed the videotape from the mini-mart next door to Joseppi's Pizza and saw a van (consistent with appellant's vehicle) pull in to the parking lot and leave four minutes later around the same time the alarm went off.
In order to determine the sufficiency of probable cause in an affidavit submitted in support of a search warrant, an issuing magistrate must make a practical common-sense decision whether, in light of all the circumstances set forth in the affidavit, including the veracity and the basis of knowledge of those persons supplying hearsay information, a fair probability exists that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates (1983), 462 U.S. 213, 238,76 L.Ed.2d 527, 548, 103 S.Ct. 2317, 2332; also see State v. Garner (1995),74 Ohio St.3d 49, 62, 656 N.E.2d 623, 636; State v. George (1989),45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph one of the syllabus. When courts scrutinize an affidavit submitted in support of a search warrant, courts afford great deference to the magistrate's probable cause determination and doubtful or marginal cases should be resolved in favor of upholding the warrant. George, supra, at paragraph two of the syllabus; also see State v. Sheppard (1998), 84 Ohio St.3d 230, 236,703 N.E.2d 286, 292; State v. Kinney (1998), 83 Ohio St.3d 85, 96,698 N.E.2d 49, 57. With these principles in mind, and when we consider Deputy Parrish's extensive factual recitation, we conclude that ample information exists to base a finding that the warrant was supported by probable cause. Thus, the items seized from appellant's residence were not obtained illegally and a motion to suppress would not have been successful.
Appellant argues that the affidavit contained "reckless and/or deliberate misstatements of fact" and that the warrant should not have been issued. Specifically, appellant contends that the evidence at trial did not support Deputy Parrish's claim that appellant's wife asked one of the police officers to accompany her inside the residence. Appellant points to Deputy Emrick's testimony that officer's had requested appellant's wife for permission to search the house, but that she refused. Appellant essentially argues that this proves that Deputy Parrish's affidavit misstates the facts and that trial counsel should have challenged the affidavit in a motion to suppress. We find no merit in this argument.
A close review of Deputy Parrish's affidavit reveals that appellant's wife asked Officer Foster, not Deputy Emrick, to accompany her inside the house. Further, at trial Officer Foster testified as follows in support of Deputy's Parrish's sworn statements:
 "Q. So a lady came out of the house and started talking with you?
 A. No. I don't believe — she didn't come out of the house. No, sir.
Q. Okay. She came —
A. I don't know where she came from.
Q. Okay. But she indicated she lived there?
A. She indicated she lived there.
 Q. And during the course of the conversation, did you and this lady have the opportunity to go into the house?
 A. Yes, sir. She said she left her child in the house and that she wanted to get the child out, and it would be beneficial for her and the child, so she asked me to go in with her, me and the other officer.
Q. Okay, so you did go into this house then?
A. Yes, sir.
* * *
 Q. Did you have occasion to look in the kitchen of the house?
A. Yes, sir, I did.
 Q. Did you see something that resembled or looked like a safe?
A. Yes, sir. Covered with bed sheets.
Q. And sitting in the kitchen?
A. Yes."
We find no evidence to contradict Officer Foster's testimony on this point. Appellant asserts, however, that Deputy Emrick contradicts Foster's testimony. Emrick testified that he asked appellant's wife for permission to come into the residence, but that she refused. We disagree with appellant's interpretation of the evidence. Although Deputy Emrick did testify that appellant's wife did not give him consent to search the house, this is not inconsistent with Officer Foster's testimony. Appellant's wife could refuse to consent to a search of the house, but ask an officer to accompany her inside the home in order to retrieve her child. This accompaniment is, obviously, less intrusive than a full-blown search. Once inside, Officer Foster observed the contraband.
We also point out that Deputy Emrick testified about the encounter between appellant's wife and Officer Foster as follows:
 "Q. And apparently while you were out getting the search warrant she must have gone in and got the child, is that your understanding?
 A. My understanding was that apparently she left and came back and then went in after the child.
 Q. You were then told by the Columbus Police Department about we heard this officer testify about seeing something under a sheet in the kitchen, and that was added to your set of facts for the search warrant, was it not?
A. That is correct."
Thus, contrary to appellant's arguments, these two accounts do not contradict one another. Although appellant's wife did not give permission to Deputy Parrish to search the premises, she did ask Officer Foster to accompany her inside the residence for the limited purpose of retrieving her child. Once inside, Officer Foster observed contraband. We find no evidence to refute Officer Foster's testimony concerning appellant's wife's request to go inside the residence. Accordingly, we find no merit to appellant's claim that the affidavit contained "reckless and/or deliberate misstatements of fact."[4]
To summarize, Deputy Parrish's affidavit included sufficient facts to support a probable cause finding and to support the search warrant's issuance. The evidence obtained from appellant's residence was not seized illegally and we find nothing to indicate that a motion to suppress evidence would have been successful. Therefore, we conclude that trial counsel did not render defective performance by failing to file a motion to suppress evidence.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
Appellant's second assignment of error involves the Ameristop Mini-Mart security camera videotape. Deputy Parrish testified at trial that he reviewed the videotape and, although he could not make a positive identification of the particular vehicle in the parking lot, the vehicle was "a van like the one appellant was driving" that evening. Appellant contends that this testimony violates the "best evidence rule" and that counsel should have objected. See Article X of the Ohio Rules of Evidence.[5] He concludes that his trial counsel, by failing to object and to seek the exclusion of the testimony, failed to provide appellant with effective assistance. We are not persuaded.
Assuming arguendo that Deputy Parrish's testimony violated Evid.R. 1002, and assuming that counsel should have objected to the admission of Parrish's testimony, we find that appellant has not demonstrated any prejudice.[6] We note that this portion of Deputy Parrish's testimony is only minimally incriminating. Parrish explains that the videotape is of poor quality and that he cannot make a positive identification of the van. In light of the overwhelming evidence against appellant, we do not find that this particular testimony prejudiced appellant or played a pivotal role in his conviction.
It is well-settled that in order to demonstrate prejudice in an ineffective assistance of counsel claim, one must show a reasonable probability that, but for the alleged error, the outcome of the trial would have been different. State v. Campbell (2000), 90 Ohio St.3d 320,336, 738 N.E.2d 1178, 1197; State v. Bays (1999), 87 Ohio St.3d 15, 27,716 N.E.2d 1126, 1140; State v. Allen (1995), 73 Ohio St.3d 626, 640,653 N.E.2d 675, 688. Appellant cannot make this showing in this case.
In the case sub judice, we note that Trooper Allard testified that he stopped appellant near Joseppi's Pizza shortly before the burglary. Several Pickaway County Sheriff's Deputies, as well as Columbus Police Department officers, testified about the contraband, including checks made payable to Joseppi's Pizza, that they found inside appellant's home. Mr. Thompson, the owner of Joseppi's Pizza, identified the items found in appellant's residence as having come from his business. In light of this evidence, we are not persuaded that, but for counsel's failure to object to the mini-mart videotape testimony, a reasonable probability exists that the outcome of this trial would have been different. We believe that the evidence against appellant in the instant case was so overwhelming that he cannot show prejudice for purposes of theStrickland test. See e.g. State v. Tucker (Nov. 6, 2001), Franklin App. No. 00AP-1304, unreported; State v. Cutlip (Jun. 15, 2001), Lake App. No. 99-L-149, unreported; State v. Mallony (Jan. 25, 2001), Jefferson App. No. 97-Je-64, unreported; State v. Gregley (Oct. 18, 2000), Cuyahoga App. No. 75032, unreported.
Thus, appellant has failed to show that he received ineffective assistance of counsel. We therefore overrule his second assignment of error.
Accordingly, having reviewed all the errors assigned and argued in the briefs, and finding merit in none of them, we hereby affirm the trial court's judgment.
 JUDGMENT AFFIRMED. JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] The address appellant gave to Trooper Allard, which was listed on the "HP2" (warning) ticket, indicated that appellant lived on Franklin Avenue in Columbus.
[2] On the first count of the indictment, however, the jury convicted appellant of complicity to breaking entering rather than breaking 
entering.
[3] The court ordered the sentences to be served consecutively so as to protect the public from future crimes appellant might commit. That decision is amply supported both by appellant's extensive criminal background and by the fact that at the time of the offense in the casesub judice, appellant was under other pending criminal charges for an alleged breaking entering offense in Fayette County.
[4] Appellant also argues that once the misstatements about appellant's wife are excluded from consideration, the remaining facts are insufficient to establish probable cause. We need not address that argument, however. Obviously, we do not agree that any "misstatements" were included in the affidavit. Thus, the affidavit as written set forth sufficient facts to establish probable cause.
[5] Generally speaking, in order to prove the contents of a photograph, the original photograph is required. Evid.R. 1002. A "photograph" for purposes of this rule includes, inter alia, videotapes. Evid.R. 1001(2). Thus, if the prosecution attempts to prove the contents of a videotape, the "best evidence rule" requires that the original tape be produced. 2 Gianelli Snyder, Evidence (1996) 344-345. Deputy Parrish explained during his testimony that the security videotape would not play properly on an ordinary VCR. We presume that this is the reason that the tape was not introduced into evidence and played for the jury.
[6] Both prongs of the Strickland test need not be analyzed if the ineffective assistance claim can be resolved under one prong. See Statev. Madrigal (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52, 64. Thus, if a claim can be resolved on grounds of lack of sufficient prejudice, that course of action may be followed. See State v. Loza (1994),71 Ohio St.3d 61, 83, 641 N.E.2d 1082, 1105.