JOURNAL ENTRY AND OPINION
{¶ 1} Rashaun Embry appeals from a judgment finding him guilty of aggravated murder, aggravated burglary, felonious assault, intimidation, and having a weapon under disability, following a bench trial before Judge Stuart Friedman. He claims ineffective assistance of counsel and error in the imposition of consecutive sentences. We vacate the sentence and remand for resentencing.
 {¶ 2} The record reveals that on August 1, 2002, Embry, purportedly high on PCP and Ecstacy, went to Jack's Bar on Cedar Avenue in Cleveland He spoke briefly with his ex-girlfriend, Dina Williams, offered her Ecstacy, and attempted to get her to leave with him. She refused. After getting a drink at last call, and shortly before 2:30 a.m., he got into a fist fight with Emmanuel Pendleton.[1] Security broke up the fight, and Embry left the bar. After the bar closed, Pendleton, his cousin, Dana Pendleton, and another man, known only as "Rick," drove to the Marathon gas station on East 55th and Woodland — apparently a neighborhood hangout — and then to an "after hours" place on East 79th and Everett Avenue. Rick went to see if they could get in. Without anyone seeing him approach, Embry appeared in front of the car and, at close range, shot Pendleton in the left shoulder. Pendleton attempted to put his car in reverse, then into drive before running it off the road and crashing it into a nearby school. He died from the gunshot injuries. His cousin witnessed the shooting and ran from the car to call for help.
 {¶ 3} Approximately three hours after Pendleton's murder and between 6:30 and 7:00 a.m., Embry went to 2716 East 99th
Street, Cleveland, in search of Dina Williams. He rang the doorbell and kicked at the front door and, when no one responded, smashed the living room window and climbed into the house. He entered Ms. Williams' bedroom and found her with Jamal Woods and, brandishing a gun, threatened to kill them. Ms. Williams ran from the bedroom and hid in the closet in her cousin, Ebony Bell's, room. Embry followed and threatened Ms. Bell to disclose Ms. Williams' hiding place and, when she pointed to the closet, Embry opened it and began beating Ms. Williams with his gun. Bell called 9-1-1 and Embry left the house, apparently in search of Jamal Woods. After a brief altercation with a neighbor, who had come to help after hearing Ms. Williams' screams, Embry got in a friend's car and was driven away.
 {¶ 4} When the police arrived, Ms. Williams identified Embry as her assailant and directed the officers to his mother's house. The police found him hiding in a closet and took him into custody for the attack on Williams, Bell, and Woods. They were unaware of Embry's connection to both this attack and Pendleton's death at this time. At the police station, Embry gave a statement to the police about the assault in which he claimed that after the bar fight, his friend James took him to the Marathon Station where a second friend, Jermaine, picked him up and took him to Ms. Williams' house. He admitted that he broke into her house and "man handled" her, and then he just left.
 {¶ 5} When the police began their investigation of Pendleton's death, Dana Pendleton identified Embry as the shooter. He was taken into custody a second time and, on August 6, 2002, he gave a second statement to police. He claimed that, after the fight at Jack's bar, he did not go directly to the Marathon station, but instead, went to his cousin's house, changed his clothes and rode his bike to the gas station. He admitted that he saw Pendleton's cousin there, but claimed that after he saw him, he "took off."
 {¶ 6} The Grand Jury returned an indictment for the following offenses: Count One, aggravated murder[2] with two firearm specifications; count two, aggravated burglary[3] with two firearm specifications; Counts three, four and five, felonious assault,[4] each with two firearm specifications; Count six, intimidation;[5] and count seven, having a weapon under disability.[6]
 {¶ 7} Following the March 2002 bench trial, the judge found Embry not guilty on two of the three counts of felonious assault, but guilty on all remaining counts. He was sentenced to 20 years to life on count one, plus three years on the firearm specification to run prior and consecutive; four years on the second and third counts, plus a three year firearm specification, also to run prior and concurrent; and one year on the sixth and seventh counts. Counts two, three, six, and seven were to be served concurrent with one another and consecutive to count one. Further, the judge ruled that the firearm specifications did not merge between count one and the remaining counts. This appeal followed on the assignments of error set forth in Appendix A.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 8} Embry claims that he was deprived of the effective assistance of counsel because his lawyer's motion to suppress his police statements was factually deficient.
 {¶ 9} To establish the grounds for an ineffective assistance of counsel claim, Embry must show that (1) the lawyer's performance was deficient, and (2) the lawyer's deficient performance resulted in prejudice.[7] The Ohio Supreme Court adopted a similar standard in State v. Lytle[8] by stating:
"When considering an allegation of ineffective assistance ofcounsel, a two step process is usually employed. First, theremust be a determination as to whether there has been asubstantial violation of any of defense counsel's essentialduties to his client. Next, and analytically separate . . . theremust be a determination as to whether the defense was prejudicedby counsel's ineffectiveness."
 {¶ 10} The prejudice arms of both Strickland and Lytle is a "but for" standard — i.e., but for the lawyer's deficient performance, the outcome of the trial would have been different.[9] The court must look to the totality of the circumstances, and not isolated instances of an allegedly deficient performance.[10] "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'"[11] Therefore, under this standard, Embry must show that his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from that deficient performance.[12]
 {¶ 11} Embry's attorney moved to suppress his statements on September 11, 2002, which the judge eventually denied during trial noting that it was "certainly brief" and "that it contained nothing specific as to the facts or circumstances under which the statement was taken." The brief attached to this motion stated in its entirety:
"The statements taken by police in the case at bar are inviolation of the defendant's Fifth, Sixth and FourteenthAmendment rights under the Ohio and United States Constitutions.The admission into evidence of said statements would violate theguarantees contained in the case of Miranda v. Arizona384 U.S. 435 (1966), and Bruton v. United States, (1968) 391 U.S. 123."
 {¶ 12} In State v. Guy,[13] we addressed the issue of ineffective assistance of counsel in the context of filing a motion to suppress.
"Although a defendant's constitutional right to effectiveassistance does not require defense counsel to file a motion tosuppress in every case, where there exists reasonable grounds forfiling a motion to suppress, counsel's failure to file the motionmay constitute ineffective assistance and warrant areversal."[14]
 {¶ 13} However, "`[a] criminal conviction will not be reversed on the ground of ineffective assistance of counsel solely because defense counsel failed to file a timely motion to suppress evidence, where the record does not demonstrate that the evidence was illegally obtained.'"[15]
 {¶ 14} Embry asserts on appeal that his statements were involuntarily made since he was intoxicated and high on drugs on the night of the incidents, therefore, mandating their suppression. The last reference to Embry's state of intoxication in the record is at approximately 2:30 a.m., on the morning of August 2nd, when his ex-girlfriend observed his seemingly drug induced behavior. His first statement to police was taken eight and a half hours later, at 11:00 a.m. Even if his lawyer would have adequately presented Embry's intoxication as grounds for suppression, the record contains no evidence that he was intoxicated and/or on drugs at the time of his second statement on August 6th, or that this statement was involuntarily made.
 {¶ 15} In addition, even if Embry can satisfy the first prong of the Strickland, supra, test, by showing deficient performance, he has failed to satisfy the second prong of the test, which mandates a showing of prejudice. Embry cannot support the contention that but for his lawyer's deficient motion, the outcome of the trial would have been different. This assignment of error lacks merit.
 R.C. 2929.14 {¶ 16} Embry next contends that the judge erred in imposing consecutive sentences because he failed to make the statutorily enumerated findings and reasons supporting those findings under R.C. 2929.14(E)(4).
 {¶ 17} To justify consecutive sentences "reserved for the worst offenses and offenders,"[16] the judge must make specific findings on the record. First, he or she must find that consecutive sentences are necessary to protect the public or punish the offender. Second, he or she must find that the proposed consecutive sentences are not disproportionate both to the seriousness of the offender's conduct and the danger the offender possesses. Then he or she must find that one of the following exist:
"(a) The offender committed one or more of the multipleoffenses while the offender was awaiting trial or sentencing, wasunder a sanction imposed pursuant to section 2929.16, 2929.17, or2929.18 of the Revised Code, or was under post-release controlfor a prior offense. (b) At least two of the multiple offenseswere committed as part of one or more courses of conduct, and theharm caused by two or more of the multiple offenses so committedwas so great or unusual that no single prison term for any of theoffenses committed as part of any of the courses of conductadequately reflects the seriousness of the offender's conduct.(c) The offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public fromfuture crime by the offender."
 {¶ 18} During Embry's sentencing hearing, the judge imposed concurrent sentences on counts two, three, six, and seven, but ordered the term to run consecutive to count one. The judge offered only the following rationale:
"I know that this seems like a long sentence to you. I'm surethat to the family and friends of Mr. Pendleton and Miss Williamsthat it doesn't seem nearly long enough. I know that you say thatthe drugs played a role in this. Nobody forces people to takedrugs. Nobody forces someone to take PCP. It's a tragedy, butsomebody has to pay the price."
 {¶ 19} As we have held:
"Imposing consecutive prison terms for convictions of multipleoffenses, therefore, is appropriate upon making certain findingsas enumerated in this statute. When the trial court does so,however, it must state its reasons on the record. See R.C.2929.19(B)(2)(c). Failure to sufficiently state these reasons onthe record constitutes reversible error."[17]
 {¶ 20} The Ohio Supreme Court has held that R.C.2929.19(B)(2)(c) mandates that "when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing."[18] Absent these findings and reasons, an appellate court cannot conduct "a meaningful review of the sentencing decision."[19]
 {¶ 21} The dissent asserts that this case should be remanded to allow the judge to supplement his original sentencing entry to add his rationale. However, without the required findings made on the record at the time of imposing the original sentence, we have no way of knowing if the sentence is, as the dissent suggests, "not necessarily incorrect, but merely incomplete."
 {¶ 22} R.C. 2929.19 outlines the requirements of a sentencing hearing, and contains no provision which permits the limited remand that the dissent suggests. Further, Crim. R. 43(A) requires the defendant's physical presence during sentencing,[20] and the dissent's suggestion of a supplement to the journal entry ignores this requirement. As we have previously held, a trial judge cannot abrogate a defendant's right of allocution by imposing his sentence in the defendant's absence.[21]
 {¶ 23} Moreover, it is impossible for a reviewing court to determine whether the facts supporting a sentence do in fact support the sentence if those facts are not encompassed within the judge's original sentence. The suggestion of a limited remand offers the judge the benefit of hindsight and gives him the power to consider circumstances and facts that may not have been fully considered at the time of the first hearing. If we remand for such a purpose, "[t]he reviewing court, therefore, would not be reviewing a specific reasoning process; it would be walking around with a divining rod."[22]
 {¶ 24} And although the dissent suggests that remanding and vacating the entire sentence allows for multiple appeals on the same sentence, even a supplement to the sentencing entry would constitute an appealable entry.
 {¶ 25} Because the record lacks the full analysis for the imposition of consecutive sentences, the second assignment of error has merit.
 {¶ 26} Sentence vacated and remanded for resentencing.
 ASSIGNMENTS OF ERROR: "I. The failure of defense counsel to develop and argue thefacts and the circumstances requiring the suppression of theappellant's statements constitutes the denial of effectiveassistance of trial counsel."
 "II. The trial court erred when it sentenced the appellant toserve consecutive prison terms without making the proper findingspursuant to r.c. 2929.14(e)(4)."
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., concurs
[1] The record presents conflicting evidence as to why the fight occurred and who started it.
[2] R.C. 2903.01, with two firearm specifications in violation of R.C. 2941.141 and 2941.145.
[3] R.C. 2911.11, with two firearm specifications in violation of R.C. 2941.141 and 2941.145.
[4] 2903.11, with two firearm specifications in violation of R.C. 2941.141 and 2941.145.
[5] R.C. 2921.04.
[6] R.C. 2923.13.
[7] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674.
[8] (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623.
[9] State v. Crickon (1988), 43 Ohio App.3d 171, 175,540 N.E.2d 287.
[10] State v. Malone (December 13, 1989), Montgomery App. No. 10564.
[11] Id., quoting Smith v. Murray (1986), 477 U.S. 527, 535,106 S.Ct. 2661, 91 L.Ed.2d 434.
[12] State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
[13] (Dec. 2, 1999) Cuyahoga App. No. 74457.
[14] State v. Guy, supra, quoting State v. Payton (1997),119 Ohio App.3d 694, 704, 696 N.E.2d 240 (internal citations omitted).
[15] State v. Hodges (1995), 107 Ohio App.3d 578, 588,669 N.E.2d 256, 263, quoting State v. Gibson (1980),69 Ohio App.2d 91, 430 N.E.2d 954, paragraph two of the syllabus.
[16] State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473.
[17] State v. Johnson, Cuyahoga App. No. 80436, 2002-Ohio-7057. (Internal citations omitted.)
[18] State v. Comer, supra.
[19] Id. at 468, paragraph 21.
[20] State v. Bell (1990), 70 Ohio App.3d 765,592 N.E.2d 848.
[21] State v. Pavone (June 21, 1984), Cuyahoga App. No. 47700.
[22] State v. Leach (Apr. 1, 2004), Cuyahoga App. No. 82836.
KENNETH A. ROCCO, J., CONCURRING IN PART AND DISSENTING IN PART (SEE SEPARATE CONCURRING AND DISSENTING OPINION).